64176, 64177. NATIONAL CARLOADING CORPORATION v. SECURITY VAN LINES, INC.; and vice versa.

POPE, Judge.

Security Van Lines, Inc. ("Security"), a motor common carrier of household goods, filed suit against National Carloading Corporation ("NCC-NJ"), a freight forwarder, for recovery of amounts claimed owed to Security for certain shipments hauled by Security allegedly at NCC-NJ's direction in 1977. The trial court denied both parties' motions for summary judgment. The case was heard without a jury, and judgment was ordered in favor of Security in the amount of $15,728.02 plus interest from January 1, 1978.

1. In four of NCC-NJ's eleven enumerations, error is assigned to the trial court's failure to grant its motion for nonsuit, made when

Security initially rested its case. For the sake of clarity, a brief explanation of this court's construction of that motion is provided. "The remedy of nonsuit as formerly available under Code § 110-310 no longer exists." *Todd v. Waddell,* 120 Ga. App. 20, 22 (169 SE2d 351) (1969). Code § 110-310 was specifically repealed by the Civil Practice Act. Code Ann. § 81A-201 (dd). NCC-NJ's motion will be construed as a motion for involuntary dismissal pursuant to Code Ann. § 81A-141 (b) (now OCGA § 9-11-41) which provides that, in a trial by the court without a jury, the defendant may move for a dismissal at the close of the plaintiff's evidence where "upon the facts and the law the plaintiff has shown no right to relief." In jury cases the defendant has an analogous right to move for a directed verdict. *Todd,* supra.

2. NCC-NJ enumerates as error the trial court's failure to grant its motions for summary judgment and "nonsuit" based upon its plea of res judicata. After trial and judgment a denial of summary judgment will not be reviewed since such denial becomes moot when the court reviews the evidence upon the trial of the case. *Talmadge v. Talmadge,* 241 Ga. 609 (1) (247 SE2d 61) (1978).

NCC-NJ contends that an action filed by Security in 1978 ("suit 1") seeking to collect for the same shipments claimed in the case sub judice ("suit 2") acts to bar the present suit. Suit 1 was captioned "Security Van Lines, Inc. v. R. C. Van Lines, Inc., d/b/a National Carloading" after Security's good faith effort failed to ascertain the corporate agent for service of process in Georgia for "National Carloading." Evidence was adduced in suit 2 to show that R.C. Van Lines, Inc., a motor common carrier, had an agreement with NCC-NJ to handle all administrative affairs of NCC-NJ and that NCC-NJ, at that time, had no employees of its own.

In suit 1 Security's complaint was answered, but prior to the due date for response to Security's discovery requests, a consent order was agreed to by Security and counsel for R. C. Van Lines, Inc., Fletcher Thompson, who is the chief executive officer and principal shareholder of NCC-NJ in suit 2. When R. C. Van Lines, Inc. defaulted under the consent order, judgment was entered against it. Shortly thereafter, it filed for bankruptcy, and suit 2 was brought.

NCC-NJ relies upon Code Ann. § 110-501 (now OCGA § 9-12-40) regarding the conclusiveness of judgments and the correlative doctrine of res judicata. Additional support is urged by NCC-NJ by the use of cites to case law for the proposition that one whose liability is totally derivative may claim the benefit of a judgment in favor of the person from whom his liability is derived. See *Roadway Express Inc. v. McBroom,* 61 Ga. App. 223 (1) (6 SE2d 460) (1939). While we do not dispute the binding effect of the consent

order and judgment in this situation as *between* R. C. Van Lines, Inc. and Security, the facts in this case do not operate to shield NCC-NJ by allowing suit 1 to bar suit 2. In the first place, the judgment in suit 1 was not in favor of R. C. Van Lines, Inc., so there simply is no benefit of a judgment in favor of the one from whom NCC-NJ's liability is derived. *Roadway Express Inc.,* supra. Thus, the conclusiveness of the consent judgment in suit 1 is unavailable to NCC-NJ.

Moreover, the issue raised in this enumeration of error is governed by Code Ann. § 3-114 (now OCGA § 9-2-4): " 'A plaintiff may pursue any number of consistent or inconsistent remedies against the same person or different persons until he shall obtain a satisfaction from some of them.' " In *Newby v. Maxwell,* 121 Ga. App. 18 (2) (172 SE2d 458) (1970), after the plaintiff had obtained a judgment against the defendant corporation, his later suit on the same account against one of its stockholders and subsequent judgment against the stockholder were affirmed by this court. Based upon Code Ann. § 3-114, it was held: "There being no showing that the judgment obtained against the corporation had been paid, the plaintiff has not obtained satisfaction as would prevent bringing of the present action." *Newby,* supra at 19. There has, likewise, been no showing in the case sub judice that the judgment Security obtained in suit 1 against R. C. Van Lines, Inc. has been satisfied so as to preclude suit 2 against NCC-NJ for sums claimed due on the same account. See also *Campbell v. Alford,* 155 Ga. App. 689 (1) (272 SE2d 553) (1980); *Adams v. Cox,* 152 Ga. App. 376 (1) (262 SE2d 634) (1979).

3. NCC-NJ contends that the trial court erred in denying its motion for summary judgment based upon its assertion that one count of the complaint sought to recover charges illegally assessed. As previously stated, the denial of NCC-NJ's motion for summary judgment becomes moot upon review after trial is held. *Gosnell v. Waldrip,* 158 Ga. App. 685 (1) (282 SE2d 168) (1981).

Even if NCC-NJ's enumeration is read to assign error to the denial of the motion for "nonsuit" on this ground, the argument is not meritorious. Security's complaint alleged a debt owed at a rate which was calculated under the mistaken assumption that a valid "Section 409" agreement existed between Security and NCC-NJ. Simply put, "Section 409" agreements allowed a common carrier to provide a discount in the tariff rate charged to freight forwarders as authorized during the pertinent time period by 49 USCA § 1009. See Part IV, Section 409, Interstate Commerce Act. Security timely amended the instant complaint to specify that, in the alternative, if a "Section 409" agreement did not exist between the parties, the debt claimed would be for the full published tariff rate. Evidence was adduced at trial to show that no such agreement existed; therefore, judgment was

granted to Security at the full tariff rate. "Unless and until suspended or set aside, this [published tariff] rate is made, for all purposes, the legal rate, as between carrier and shipper." Aero Trucking, Inc. v. Regal Tube Co., 594 F2d 619, 622 (7th Cir. 1979), quoting Keogh v. Chicago & N. R. Co., 260 U.S. 156, 163 (43 SC 47, 67 LE 183) (1922). "[F]iled tariffs have the force of law, [cits.], and establish the liability of a recipient of services covered by the tariff, even if the recipient was quoted a different price. . . ." Illinois C. G. R. Co. v. Golden Triangle Wholesale Gas Co., 586 F2d 588, 592 (5th Cir. 1978). As Security's prayer was phrased in the alternative and the correct rate was used in the judgment, the trial court committed no error in this regard.

4. In three separate enumerations (5, 9, and 10) NCC-NJ challenges the findings of fact made by the trial court relative to specific instances which tend to show an agency relationship between NCC-NJ and R. C. Van Lines, Inc. In a bench trial " 'the trial judge sits as trier of fact, and his findings are analogous to the verdict of a jury and should not be disturbed if there is any evidence to support them.' " Martin v. Georgia Stone &c., Inc., 157 Ga. App. 92, 93 (276 SE2d 141) (1981). From a review of the record, we find sufficient evidence to support the findings.

5. NCC-NJ contends that Security failed to show that the bills of lading for the shipments hauled by Security were issued to NCC-NJ. Further, NCC-NJ claims that there was no showing that the originating agents were those of NCC-NJ. Arguments raised in this enumeration are apparently offered to refute the trial court's conclusion that R. C. Van Lines, Inc. was, at all pertinent times, acting as the agent of NCC-NJ and that NCC-NJ was bound by such acts pursuant to Code Ann. § 4-302 (now OCGA § 10-6-51). See Code Ann. §§ 4-101 (now OCGA § 10-6-1) and 4-301 (now OCGA § 10-6-50).

A review of the pertinent history of NCC-NJ is helpful. National Carloading Corporation ("NCC-Del"), organized in Delaware in 1943, was originally authorized to engage as a freight forwarder in interstate commerce under permit No. FF-68 for shipment of general commodities, including households goods. In 1974 the permit belonging to NCC-Del was transferred to ABC Trans National Transport, Inc. ("ABC-TNT") a wholly-owned subsidiary of NCC-Del. In 1975 ABC-TNT voted to substitute National Carloading Corporation of New Jersey ("NCC-NJ") as transferee. Only the household goods authority was transferred. This substitution and transfer was approved by the Interstate Commerce Commission in June, 1975 with NCC-NJ being assigned permit No. FF-465. ABC-TNT operated under permit No. FF-68 for the shipment of general commodities, excluding household goods. In March, 1977 NCC-NJ was purchased by Fletcher Thompson. The

only asset of NCC-NJ was its authority to ship household goods under permit No. FF-465. Thompson testified that his only motivation for this purchase was to provide R. C. Van Lines, Inc. an additional opportunity to be awarded government contracts which were awarded on a rotating basis. A general agency agreement between R. C. Van Lines, Inc. and NCC-NJ was entered into whereby R. C. Van Lines, Inc. would manage and control the assets, operations and business records of NCC-NJ. Security was unaware of this agreement and believed until December, 1977 that it was dealing with NCC-NJ.

The record contains competent evidence to show that, even though for the most part the bills of lading were issued to National Carloading Corporation, permit No. FF-68, the only National Carloading Corporation licensed for freight forwarding of military household goods at that time was National Carloading Corporation (NCC-NJ), permit No. FF-465. Further, the record contains sufficient evidence to support the conclusion that the shipments were tendered by NCC-NJ to R. C. Van Lines, Inc. which arranged for the actual transportation to be accomplished by Security and that NCC-NJ authorized R. C. Van Lines, Inc. to submit vouchers to the United States government for payments which were made. For the foregoing reasons, the trial court did not err in concluding that a sufficient showing of agency between NCC-NJ and R. C. Van Lines, Inc. had been accomplished.

6. NCC-NJ contends that the trial court incorrectly allowed Security to re-open its case to submit additional exhibits and that, instead, NCC-NJ's motion for "nonsuit" should have been granted when Security originally rested its case. NCC-NJ asserts that the documents admitted when Security re-opened were not produced during discovery. At trial the court allowed NCC-NJ a continuance for the length of time necessary to study the proposed documents. At NCC-NJ's behest the court recessed the trial for two weeks for this purpose. The administration of the trial is within the discretion of the trial judge and allowing Security to re-open its case falls within that authority. See *Brown v. State,* 152 Ga. App. 273 (2) (262 SE2d 497) (1979). The two-week recess cured any abuse which might arguably be attributed to the admission of the documents upon re-opening of Security's case.

7. NCC-NJ claims that the trial court erred in failing to enter an order pursuant to Code Ann. § 81A-156(d) (now OCGA § 9-11-56) after denial of its motion for summary judgment. This enumeration is entirely without merit. NCC-NJ admits in its brief that this failure to enter the order may be harmless, yet it argues that it was harmed by the exclusion of a certain deposition from consideration as evidence

at the close of the case. Because the deposition was excluded based upon Security's objection to its use as evidence, and without any objection by NCC-NJ, any error which may have been assigned was waived.

8. NCC-NJ contends that the admission of a photocopy of a rate tender was error in that it was not properly certified. The document was from the records of the Department of the Army, and, according to NCC-NJ, required the seal of the Secretary of the Army before admission as competent evidence. The document in this case was notarized. Even if the document must be under seal and the admission of the notarized photocopy was error, "[i]t is settled that error, to be reversible, must be harmful. . . ." *McDaniel Printing Co. v. Ben Meadows Co.,* 144 Ga. App. 419 (2) (241 SE2d 58) (1977). No harm is asserted by NCC-NJ to have occurred due to the admission of this document.

9. NCC-NJ contends that the trial court erred in awarding interest from January 1, 1978. Code Ann. § 57-110 (now OCGA § 7-4-15) provides that all liquidated demands bear interest from the time the party becomes liable for them. "A debt or demand is *liquidated* when agreed on by the parties, or fixed as to the amount, by the operation of law." *Hargroves v. Cooke,* 15 Ga. 321 (12) (1854). As stated previously, published tariffs have the force of law. Illinois C. G. R. Co. v. Golden Triangle Wholesale Gas Co., supra. Therefore, the debt was liquidated. The shipments which form the basis of the debt took place between mid-August and early December, 1977. NCC-NJ was held liable for payment to Security for shipments at the filed tariff rates. The trial court's grant of interest beginning on January 1, 1978 was not error.

10. By cross-appeal Security assigns error to the trial court's taking judicial notice of suit 1. "In order to determine if the requisites of the doctrine of res judicata have been met, the record of the prior case must be examined. 'Thus, if a prior case is to have a res judicata application, the record of the prior case must be introduced in evidence.' [Cits.] Furthermore, 'the court can no more take judicial notice of the record in another case in the same court, without its formal introduction in evidence, than if it were a record in another court.' [Cits.]" *Spearman v. Jaudon,* 145 Ga. App. 136 (243 SE2d 90) (1978). However, the record in suit 2 contains pleadings and other documents from suit 1, including the consent order and judgment. Before considering the record in suit 1 as evidence, the trial court invited Security's counsel's objection. Specifying only the consideration of a certain deposition included in the record, counsel waived objection to the remainder. Thus, the documents from suit 1 were properly considered.

*Judgment affirmed. Deen, P. J., and Sognier, J., concur.*

DECIDED NOVEMBER 16, 1982 —
REHEARINGS DENIED DECEMBER 9 AND 17, 1982 —

*Fletcher Thompson, Mark C. Ellison,* for appellant.
*James C. Cifelli,* for appellee.