## 68494. EXXON CORPORATION v. BUTLER.
(325 SE2d 806)

BENHAM, Judge.

Appellee, Earl Butler, d/b/a Lakeshore Exxon, operated a service station in Gainesville, Georgia, and received his supplies, including fuel, from appellant, Exxon Corporation. As part of the operation, Butler accepted Exxon credit cards, the use of which was governed by a contract and credit card manual. Those documents stated, inter alia, that charge tickets must be filled out completely and that failure to do so could result in the purchases being charged back to the dealer.

Butler began accepting charges on the credit card of Ellen Silverstone in October 1979 and continued to honor the card until June 9, 1980, when he was notified by Exxon that he should no longer honor the card because it was stolen. Exxon was notified of the credit card theft in October 1979, but intentionally chose not to notify the dealer while it conducted an investigation. Exxon continued to make partial payments to the dealer during the time it knew the card was stolen, but it failed to notify the dealer, as it had done in the past with other credit cards, so that further loss could be prevented. Butler testified that he regularly sent in incomplete charge tickets and that it was the company's practice to notify him within two weeks or 30 days of stolen cards or improper charge tickets. Since no notice was given, he continued to accept the card. On June 9, 1980, some nine months later, Exxon notified Butler for the first time that the purchases made on the Silverstone card would be charged back to him due to his failure to completely fill out the charge slips by including quantity purchased, tag number, product, etc.

Butler brought suit against Exxon to prevent the charge-back and to recover the amount unpaid on the credit card. A non-jury trial was held in the Superior Court of Fulton County and judgment was rendered in favor of Butler.

The trial court expressly based its judgment on the theory of mutual departure. " 'Where parties, in the course of the execution of a contract, depart from its terms and pay or receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given the other of intention to rely on the exact terms of the agreement. Until such notice, the departure is a quasi new agreement.' " *Few v. Automobile Financing, Inc.*, 101 Ga. App. 783, 784 (115 SE2d 196) (1960). See also OCGA § 13-4-4.

Since the case was tried before the court without a jury, the judge was trier of both law and fact. *Southern Feed Stores v. Sanders*, 193 Ga. 884, 887 (20 SE2d 413) (1942); OCGA § 9-11-52. "In a bench trial 'the trial judge sits as trier of fact, and his findings are analogous to

the verdict of a jury and should not be disturbed if there is any evidence to support them.' [Cit.]" *Nat. Carloading Corp. v. Security Van Lines*, 164 Ga. App. 850 (4) (297 SE2d 740) (1982). "[W]e do not, on appeal, blindly accept the evidence of the plaintiff or that of the defendant or determine the merits of the case from a point of advocacy. Rather, we follow the rule that where the trial court finds the facts and enters judgment thereon, the sole question for determination is whether there is any evidence to authorize that judgment. It is our duty to construe the evidence to uphold the judgment rather than upsetting it. [Cits.] . . . In fact with reference to actions in an appropriate trial forum tried upon the facts without a jury, it has been held consistently that even though the findings of fact and conclusions of law contended for by the appellant would have been authorized by the evidence presented on the trial, yet, where the facts found by the trial court were authorized by the evidence, such findings will not be set aside. [Cit.] In the absence of legal error . . . an appellate court is without jurisdiction to interfere with the judgment supported by some evidence even where the judgment may be against the preponderance of the evidence. [Cit.]" *All-Phase Elec. &c. Co. v. Transamerica Ins. Co.*, 162 Ga. App. 104, 105 (290 SE2d 208) (1982).

Applying the rule of waiver as set out in *Crawford v. First Nat. Bank of Rome*, 137 Ga. App. 294, 295 (223 SE2d 488) (1966), that "provisions of a written contract may be waived by acts or conduct," the evidence clearly permitted the trial court to find that the conduct of the defendant in delaying for over nine months in notifying the plaintiff that the credit card had been stolen; in benefiting from the continued sale of its products by the dealer; and in continuing to pay the dealer constituted a waiver of the contractual provision. "There being evidence to support the findings of the trial court, the judgment must be affirmed." *Parr v. Jones*, 163 Ga. App. 597, 598 (295 SE2d 570) (1982).

*Judgment affirmed. McMurray, C. J., Deen, P. J., Banke, P. J., Birdsong, P. J., Carley, Sognier, and Beasley, JJ., concur. Pope, J., dissents.*

DECIDED DECEMBER 4, 1984 —
REHEARING DENIED DECEMBER 20, 1984 —

*Earle B. May, Jr., G. Conley Ingram*, for appellant.
*Danny J. Lovell*, for appellee.

POPE, Judge, dissenting.

I must respectfully dissent from the majority opinion. While I agree with the majority that the "any evidence" rule applies to the findings made by a trial court in a bench trial, my review of the rec-

ord turns up no competent evidence to support the trial court's findings of temporary mutual departure. Obviously, this is a case akin to David and Goliath. The majority opinion gives great weight to the fact that Exxon failed to notify Butler promptly of a stolen credit card. No matter how emotionally satisfying reliance on this aspect of the case may be, nonetheless, under the competent evidence of record, it is legally irrelevant to the issue of temporary mutual departure. In order to fully explain my dissent, I must expand the recitation of facts set out in the majority opinion.

Earl Butler d/b/a Lakeshore Exxon, Gainesville, Georgia (Butler) brought suit against Exxon Corporation (Exxon) for money allegedly wrongfully withheld by Exxon. The money in issue involved credit transactions at Butler's station in Gainesville. Exxon defended on the ground Butler had failed to perform a condition precedent in the contract, in that he failed to follow required procedure in filling out the credit tickets. Butler contended that the condition precedent was inapplicable due to a mutual departure from the contract terms.

The franchise agreement between Exxon and Butler provided that Butler would allow credit to customers holding valid Exxon charge cards for purchases at the station. The contract stipulated that upon the submission of credit tickets to Exxon showing such credit transactions, Exxon would reimburse Butler for the credit purchases, provided that Butler followed the directives in Exxon's credit manual which was incorporated into the contract by reference. The contract gave Exxon the right to reassign to Butler any credit tickets not conforming to the requirements of the manual. Further, the contract provided that the value of such reassigned credit tickets would be due and owed to Exxon immediately. Among other requirements, the credit manual required Butler to fill out the credit tickets completely with customer name and number, the date of purchase, product purchased, quantity, unit amount, and total sale, along with the customer signature. The credit manual stated explicitly that all tickets not properly completed could be charged back to the dealer. No time limit upon this right appeared in the franchise agreement or in the credit manual.

At trial, Butler testified that Exxon had charged back to him tickets made upon the card of Ellen Silverstone. He later learned that the card was stolen. Butler contended in his testimony that Exxon was obligated to inform him within 30 days of any credit card stolen, and that Exxon had not done so in this case. He attempted to testify that he had been told this was Exxon's policy by one of its sales representatives; however, counsel for Exxon objected to the testimony as hearsay, and the objection was properly sustained. Later, on cross-examination, Butler acknowledged that nowhere in the contract or in the credit manual was any requirement that Exxon notify any dealer

within any particular time that a credit card was stolen. The obvious reason the agreement between Exxon and its dealer, Butler, did not provide for any time limitation for notification of stolen credit cards is that the agreement contemplates that any loss suffered would be solely Exxon's, provided the dealer followed the agreement in filling out the credit tickets.

Butler attempted to testify that he had a practice of sending in to Exxon improperly filled-out tickets, and that Exxon accepted them. Again, counsel for Exxon objected and again the objection was sustained. Later in his testimony, Butler tried to say that no dealer filled the cards out in accord with the contract and credit manual. Another objection was made and sustained. On cross-examination, Butler admitted that the tickets charged back to him were not filled out in accordance with the contract and credit manual. He also admitted that tickets on customers other than Ellen Silverstone had been charged back to him for being improperly filled out. Butler presented no other witness or other evidence to support his claim that Exxon was obligated to notify him within 30 days or any other period that a credit card had been stolen. Butler presented no competent evidence that Exxon had, at any time, accepted tickets which were not filled out in accordance with the contract.

Exxon adduced evidence showing that the Silverstone tickets charged back to Butler were so charged to him because they were not filled out in accordance with the credit manual. The witness for Exxon acknowledged that, under the contract, if the tickets were completely filled out, Exxon would bear the loss on a stolen credit card and the dealer would be paid for the credit tickets. Exxon further adduced evidence showing that during the period covered by the Silverstone tickets, it had charged back tickets involving other customer accounts to Butler for failure to follow the credit manual.

"Where parties, in the course of the execution of a contract, depart from its terms and pay or receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given to the other of intention to rely on the exact terms of the agreement. The contract will be suspended by the departure until such notice." OCGA § 13-4-4. " 'While a distinct stipulation in a contract may be waived by the conduct of the parties, it must appear that it was the intention of the parties to treat such stipulations as no longer binding. The mere fact that one party so intended would not bring about this result. It must appear that it was the mutual intention; that is, the circumstances must be such as, in law, to make practically a new agreement as to the stipulations in the original contract.' " *Southern Feed Stores v. Sanders*, 193 Ga. 884, 887 (20 SE2d 413) (1942). "Though a quasi new agreement arises where the parties mutually depart from the terms of the origi-

nal agreement and pay or receive money under such departure [cit.], there must be more than a simple breach on the part of one of the parties; there must be a mutual departure." *Crawford v. First Nat. Bank of Rome,* 137 Ga. App. 294, 296 (223 SE2d 488) (1976).

The evidence at trial showed only that Butler consistently failed to complete the credit tickets as required by the contract in the use of Silverstone's credit card. The evidence shows other occasions with other customers in which Butler failed to comply with the contract and Exxon charged back the tickets to Butler for non-compliance with the contract. Thus, there is evidence that Exxon at all times pertinent insisted on adherence to the contract as written. Although Butler contended that there was a pattern or course of conduct by Exxon of accepting credit tickets which did not comply with the requirements of the credit manual, the record is devoid of any evidence to support this. Under the contract the issues of when the credit card was stolen, and when Exxon knew of it, and when Exxon notified Butler it was stolen, are irrelevant, for if Butler had complied with the credit manual requirements and the contract, as Exxon had every right to presume he would, the entire loss would be to Exxon. The record shows no evidence, either in the contract or otherwise, which would require Exxon to charge back the credit tickets within any particular time.

Thus, the evidence at trial showed only Butler's breach of the contract. This is not sufficient to show a mutual intention by Butler and Exxon to depart from the requirements of the contract. See also *Newby v. Bank of Pinehurst,* 159 Ga. App. 890 (285 SE2d 605) (1981); *Williams v. Doster,* 153 Ga. App. 174 (1) (264 SE2d 707) (1980). Therefore, based upon the competent evidence of record, I am constrained to find that Butler did not prove his case, and that there is no evidence of record to support the trial court's findings. For these reasons, I would reverse the judgment of the trial court.