## 55031. SUTTON v. SUTTON.

QUILLIAN, Presiding Judge.

Plaintiff brought an action in tort against his father for injuries incurred in attempting to help his father and younger brother recapture an escaped bull. The defendant appeals from judgment for the plaintiff. *Held:*

1. The defendant alleges the court erred in entering judgment in favor of the plaintiff and in denying his motion for directed verdict and judgment notwithstanding the verdict or new trial. We do not agree.

Defendant purchased a "stock bull" on April 19, 1975. He and his younger son, Leon, brought the bull home in a trailer. Leon Sutton testified that the bull, a cross between a "Black Angus and a Brahman," charged the side of the trailer "as if he wanted to get at us." When the bull was released he "charged through the fence," across the tobacco field, and over another fence into a neighbor's pasture. This was around 11 a.m. When they

attempted to return the bull to their pasture he jumped another fence and went into a swamp. The defendant and his son pursued the bull through the swamp for several hours.

Plaintiff, the elder son of the defendant, went to his father's house at approximately 2 p.m. and was told by his mother that his father had bought the bull that morning and "he had charged the side of the trailer and had broken out and got away from them." Plaintiff returned home, but at 5:30 or 6 p.m. returned to his father's house to see his father and brother returning home. His father asked him to help them and drive them to the place where the bull had last been seen and they would attempt to drive the bull toward home and "assist him in corralling or penning the bull." After he had taken his father and brother to where they requested, he returned to his father's house and his mother told him the bull had come back into their field. He called for his father and brother to join them and the father and his two sons surrounded the bull "in a semicircle."

The plaintiff testified that the bull saw that they were trying to herd him toward home and "he came directly at me." The bull struck him in the stomach and then ran over him, breaking his leg. He knew "this was a new bull . . . but [he] didn't know he was crazy or wild . . . or even would try to kill you." He had seen the bull for only "2 or 3 minutes" before the bull ran over him. His father did not warn him the "bull was dangerous and might hurt you," nor that "he had charged anybody or run at anybody or what have you."

Leon Sutton, the younger brother, testified that they had pursued the bull for all that day and seen him jump numerous fences and escape through the very dense swamp, and after the plaintiff had taken them to where the bull was last seen, they found the bull. He threw some sticks at the bull and "[h]e took off running right towards [him]. . . [T]here was about a 12 inch pine tree there by [him] and [he] just got behind the pine tree, and [the bull] came running right by [him], within about 10 feet or so." The father was present when this happened but the plaintiff was not. Leon agreed that his father did not warn the plaintiff that "the bull might hurt him." That night,

Leon and his father warned their neighbors about the escaped bull. Leon found the bull the next day and shot him with a 30.06 rifle.

Plaintiff contends the defendant was negligent in failing to warn him the new stock bull was in a highly excited and emotional state, was dangerous and "subject to harm anyone or anything that got in his way." Defendant contended that the injury occurred as a result of accident, that plaintiff assumed the risk of injury, and if defendant was negligent — plaintiff was equally negligent.

To determine what duty, if any, was owed plaintiff by the defendant, we must determine defendant's status at the time of the injury. Although he visited his parents as a social guest, his father twice requested his help in capturing the escaped bull. Where the primary purpose of a visit is to perform services for the host, the legal status of the visitor is that of an invitee. *Chatham v. Larkins,* 134 Ga. App. 856, 858 (216 SE2d 677). Plaintiff was not performing such incidental services for his host that he would retain his status as social guest, but had started performing a task which was for the sole benefit of the host. Thus he was clearly an invitee. *Chatham v. Larkins,* 134 Ga. App. 856, 858, supra; accord, *LaBranche v. Johnson,* 127 Ga. App. 244 (2) (193 SE2d 228).

Under Code § 105-401: "Where the owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such person for injuries occasioned by his failure to exercise ordinary care in keeping the premises and approaches safe."

"The application of this section cannot be restricted to purely physical defects in real property or personal property located thereon. It must be interpreted to include risks upon the premises in the nature of vicious animals or ill-tempered individuals likely to inflict harm upon invitees visiting upon the premises." *Ga. Bowling Enterprises v. Robbins,* 103 Ga. App. 286, 287 (119 SE2d 52); see also *Norman v. Norman,* 103 Ga. App. 626, 632 (120 SE2d 42).

Likewise, an owner or occupier of land is liable to invitees for injuries they sustain as a result of his failure

to warn them of dangers which he was aware of, or in the exercise of reasonable care should have known. *Lenkeit v. Chandler,* 97 Ga. App. 769, 770 (104 SE2d 476); accord, *Goldsmith v. Hazelwood,* 93 Ga. App. 466, 468 (92 SE2d 48). However, a person is not expected to foresee and warn against dangers which are not reasonably expected, and which would not occur except under exceptional circumstances or from unexpected acts of the person injured. *Banks v. Champion,* 118 Ga. App. 79 (2) (162 SE2d 824).

An owner or keeper of a vicious or dangerous animal, who has permitted such animal, by careless management, to go at liberty, may be liable to those who sustain an injury as the result of the vicious or dangerous propensity of the animal only if the owner knows of the vicious or dangerous character. *Flowers v. Flowers,* 118 Ga. App. 85 (1, 2) (162 SE2d 818); Code § 105-110. In the instant case, the evidence showed the father was aware of the vicious nature of the bull when he saw the bull charge his younger son who had to take refuge behind a tree.

We have considered the fact that in order to constitute notice to an owner or keeper of an animal's vicious or dangerous nature, there should be an incident or incidents which would put a prudent man on notice to anticipate the event which occurred. See generally 3A CJS 674, Animals, § 181. And, a single incident may not adequately place a person on notice. The test should be whether the one incident was of such nature as to cause a reasonably prudent person to believe that the animal was sufficiently dangerous as to be likely to cause an injury at a later time. Id.

"The true ground of liability of the owner or occupant of property to an invitee who is injured thereon is the superior knowledge of the proprietor of the existence of a condition that may subject the invitee to an unreasonable risk of harm." *Gibson v. Consolidated Credit Corp.,* 110 Ga. App. 170 (2a) (138 SE2d 77); *Holtzclaw v. Lindsay,* 122 Ga. App. 703 (178 SE2d 561). Here the defendant clearly had the superior knowledge of the vicious nature of the bull by reason of its earlier charge at his younger son. As a matter of law, the dangerous and vicious nature of the bull to charge toward a person was known to the

defendant, and it was his legal duty to warn an invitee of this peril who might not be aware of it where he enlisted the aid of the invitee in capturing the dangerous animal. See *Lenkeit v. Chandler,* 97 Ga. App. 769, supra.

" 'Questions of negligence, contributory negligence, cause and proximate cause, whose negligence, and what negligence, including lack of care for one's own safety and lack of ordinary care in avoiding the consequences of another's negligence, are, except in plain, palpable and indisputable cases, solely for jury determination.' " *Holcomb v. Ideal Concrete Products,* 140 Ga. App. 857 (232 SE2d 272). The issue of assumption of risk is also for the jury under proper instruction. *Pertilla v. Farley,* 141 Ga. App. 620 (1) (234 SE2d 125). The jury was properly instructed and found for the plaintiff. There is sufficient evidence to support their verdict. The trial court did not err in denying defendant's motion for directed verdict, for judgment notwithstanding verdict, or new trial.

2. The defendant alleged the plaintiff assumed the risk of injury in the instant case. We can not agree. The doctrine of assumption of risk presupposes knowledge of the danger assumed. *Gregory v. Hester,* 123 Ga. App. 406, 409 (181 SE2d 104). There was no showing that the plaintiff was aware of the danger that the bull would charge a person. He had seen the bull only for a few moments before the bull charged toward him. Also, both the defendant and his younger son admitted they did not advise the plaintiff of the danger that the bull might charge him. We find no merit in this enumeration.

*Judgment affirmed. Webb and McMurray, JJ., concur.*

ARGUED JANUARY 10, 1978 — DECIDED FEBRUARY 24, 1978.

*Young, Young, Ellerbee & Clyatt, F. Thomas Young, Robert M. Clyatt,* for appellant.

*Yancey & Perkins, Carson Dane Perkins,* for appellee.