A93A0444. TORRANCE et al. v. BRENNAN.
(432 SE2d 658)

COOPER, Judge.

Appellee sued appellants, Mr. and Mrs. Torrance, after their dog attacked and seriously injured her. A jury awarded appellee $30,000 in damages, and appellants appeal from the judgment entered on the jury verdict.

Appellants and appellee were next door neighbors. Viewing the evidence in a light to support the verdict, it appears that Mrs. Torrance asked appellee if she would feed the dog while appellants were out of town. Appellee agreed, and walked within range of the chained-up dog while Mrs. Torrance went to get the dog's food and bowl. The dog jumped up on appellee and severely bit her left arm and breast. Appellee's fiance rushed her to the emergency room, where a plastic surgeon anesthetized the area and cleaned and sutured the injuries,

cutting away much damaged tissue. Appellee suffered from pain as well as numbness during treatment and afterward, and the injured areas still give her pain at times. She continued to see the plastic surgeon for follow-up treatment for several months, and lost wages for approximately two-and-one-half weeks of missed work. Appellee's scars are permanent and visible. The plastic surgeon suggests that the visible scarring on her arm may be lessened by revision surgery, but appellee has not had such surgery because she cannot afford it.

Approximately a month before this attack, appellee saw appellants' dog jump up on a ten-year-old girl and put his mouth completely around her arm, leaving red marks. About a week after the incident with the little girl, appellee saw the dog jump up on a woman riding by on a bicycle and use its teeth to rip off the woman's pants. Mrs. Torrance was with appellee on both occasions and was aware of both incidents. Additionally, Mrs. Torrance told appellee on the day of the attack that the dog had "nipped" another neighbor on the buttocks. As a result, appellee was somewhat apprehensive about taking care of the dog, but Mrs. Torrance assured her that the dog would not attack her because she was a friend.

At the time of the attack, appellee did not file a police report. She did call the county animal control expert, but the expert was on vacation. When appellee saw appellants' dog loose in her back yard two to three weeks later, however, she called the animal control expert again as well as the police. This time the expert came out, investigated, and determined that the dog was dangerous or potentially dangerous. The expert was allowed to testify over objection about her investigation and conclusion. The police officer who responded to appellee's call wrote a report indicating that appellants' dog had broken loose from his chain, and the officer was allowed to testify over objection regarding this subsequent incident.

1. Appellants first argue that the trial court abused its discretion in allowing the testimony of appellee, the animal control expert, and the police officer regarding occurrences subsequent to the dog's attack on appellee, since such occurrences could not be relevant to appellants' knowledge of their dog's dangerous propensities. Under OCGA § 51-2-7, a person who owns a dog may be liable for injuries caused by the dog if the dog has dangerous propensities *and* the owner is aware of that fact. See, e.g., *McCree v. Burks*, 129 Ga. App. 678 (200 SE2d 491) (1973). Thus, contrary to appellants' assertion, the dog's dangerous character was at issue totally apart from the issue of appellants' knowledge of his dangerous character. While the expert's report concluding that the dog was dangerous or potentially dangerous could not be relevant to the issue of knowledge because it was issued after the attack on appellee, the fact that the dog was declared dangerous or potentially dangerous three weeks after the attack was relevant to

whether the dog had dangerous propensities at the time of the attack. See *Wright v. Dilbeck*, 122 Ga. App. 214 (4) (176 SE2d 715) (1970). The expert's testimony was therefore relevant, and most of appellee's challenged testimony was relevant to explain why the expert's report was made three weeks later rather than immediately after the attack. Accordingly, the trial court did not abuse its discretion in allowing this evidence.

On the other hand, the testimony of the police officer regarding the subsequent occurrence of the dog breaking loose and running into appellee's yard was without legal relevance to any issue in the case and should have been excluded. The only logical purpose of such testimony was to raise the inference that if appellants were careless in their management of the dog on one occasion, they were probably careless on the occasion in question, and this inference is legally impermissible under OCGA § 24-2-2. However, the police officer's testimony was extremely brief, as was appellee's challenged testimony regarding the incident. As is discussed further in Division 2, appellee produced substantial evidence showing that the dog had dangerous propensities and that appellants knew of their dog's dangerous propensities at the time of the attack. Moreover, the jury's $30,000 award does not seem excessive in light of the evidence presented regarding the seriousness of appellee's injuries; therefore, it does not appear the jury inflated the award because of the subsequent incident. Thus, in the context of the entire record, we conclude that the trial court's failure to exclude this brief testimony was harmless. See *Amax, Inc. v. Fletcher*, 166 Ga. App. 789 (3) (305 SE2d 601) (1983); *Brooks v. Steele*, 139 Ga. App. 496 (1) (229 SE2d 3) (1976).

2. Appellants next contend that their motion for a directed verdict should have been granted. Denial of a motion for directed verdict must be affirmed if there is "any evidence" to support the verdict. *Dunkin' Donuts of America v. Gebar, Inc.*, 202 Ga. App. 450 (1c) (414 SE2d 683) (1992).

Specifically, appellants contend there was no evidence that appellants knew of their dog's dangerous propensity to severely bite people. While they acknowledge the incidents with the ten-year-old girl, the bicyclist, and the other neighbor, appellants assert that they were without the requisite notice because these incidents were not sufficiently similar to the attack on appellee and were much less serious. " ' "It is not enough . . . that the possessor of the animal has reason to know that it has a propensity to do harm in one or more specific ways; it is necessary that he have reason to know of its propensity to do harm of the type which it inflicts." ' [Cit.]" *McCree*, supra at 680. However, this does not mean an incident involving the exact same conduct and the exact same injury must actually occur before the owner's knowledge may be inferred, as long as there is an incident or

incidents "which would put a prudent man on notice to anticipate the event which occurred." *Marshall v. Person*, 176 Ga. App. 542 (336 SE2d 380) (1985). Appellee presented evidence of three prior incidents in which appellants' dog jumped up on people and attacked them with his mouth. This is the same type of conduct resulting in injury in this case. Although the attack in question was the first time the dog's behavior resulted in serious injury, appellee's evidence was more than sufficient to allow a jury to find that the dog's established pattern of behavior should have put appellants on notice that their animal might cause injury by displaying such behavior towards another at a later date. See *Evans-Watson v. Reese*, 188 Ga. App. 292 (372 SE2d 675) (1988). Thus, the motion for directed verdict was properly denied.

*Judgment affirmed. McMurray, P. J., and Beasley, P. J., concur.*

DECIDED JUNE 15, 1993.

Barrow, Sims, Morrow & Lee, A. Mark Lee, for appellants.
Jones, Boykin & Associates, Harold J. Cronk, Robert K. Hardeman, for appellee.