## A00A1597. THE STATE v. FOREHAND.
(542 SE2d 110)

PHIPPS, Judge.

After an altercation with a deputy sheriff, Dwayne Forehand was indicted for felony and misdemeanor obstruction of a law enforcement officer and simple battery. The court granted Forehand's motion to suppress a videotape which captured part of the altercation. And, after granting Forehand's motion to suppress evidence of the traffic stop which initiated the encounter, the trial court dismissed the

---

indictment. The State appeals the grant of both motions and the dismissal of the indictment. We reverse the suppression of the videotape because we find that the stop was not invalid and that the probative value of the videotape is not substantially outweighed by a danger of unfair prejudice to Forehand. We reverse the suppression of evidence of the stop and the dismissal of the indictment because we find that the stop was not invalidated by lack of formal enactment of a curfew or by selective enforcement of the curfew.

On April 15, 1999, a tornado struck the town of Vienna, in Dooly County, causing extensive damage. David Musselwhite, the Chief of Police, testified at a suppression hearing that in the days following the tornado the Vienna City Council enacted a resolution which gave the local police the authority to take action to protect the public safety. According to Musselwhite, the City Council placed him in charge of directing emergency affairs for the town and adopted a resolution with his suggestion of a curfew from 7:00 p.m. to 7:00 a.m. for Vienna. To Musselwhite's knowledge, the curfew was not reduced to writing.

Musselwhite requested additional emergency relief personnel from law enforcement agencies of other jurisdictions. Jones County Deputy Sheriff Ed Bailey was among those who went to assist in Vienna. Musselwhite informed Bailey of the curfew and told him to enforce it.

On April 18, Forehand was driving in Vienna at approximately 10:00 p.m. Bailey stopped him with the intention of telling him that he could not be on the streets at that time because of the curfew. According to Bailey, the following occurred. Forehand quickly exited his vehicle and approached Bailey in an aggressive manner. Irately, he asked Bailey, "Who are you?", and "Do you know who I am? You had no right to stop me." Then he yelled that he was the probate judge of Dooly County. Bailey put his hands up, and Forehand knocked them away. Bailey told Forehand that he was under arrest for "striking" and attempted to grab Forehand's arm to handcuff him. Forehand repeatedly pushed him away, and a physical altercation ensued during which Bailey and Forehand pushed, shoved and scuffled with each other and Forehand swung and hit Bailey in the back of his head.

A backup officer arrived at the scene just before the physical altercation between Bailey and Forehand. A videocamera on that officer's car captured a portion of the events.

The trial court suppressed the videotape and commented that it did not capture the entirety of the events between Bailey and Forehand. The court explained that "to admit it to a jury would be terribly, terribly misleading because it lacks completeness." The court suppressed the stop, finding that no law had been enacted declaring

a curfew and that no valid basis existed for the stop of Forehand. The court emphasized that there was no written evidence of the curfew and that exceptions from it apparently had been made for persons who needed to travel to and from work at a chicken factory outside the city limits.

1.

"While the trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine whether the ruling was clearly erroneous, where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review."[1]

The State has inherent police power which " 'extends to the protection of the lives, health and property of the citizen, and to the preservation of good order and public morals.' "[2] That power " 'is not subject to any definite limitations, but is coextensive with the necessities of the case and the safeguard of public interest.' [Cits.]"[3] The enactment of temporary curfews in emergency situations has been upheld as a legitimate use of police power although such measures curtail the movement of persons who otherwise would enjoy freedom from restriction.[4] Here, there appears to be no dispute that a state of emergency existed in the City of Vienna and that directions to enforce a curfew formed the basis for Bailey's stop of Forehand. In a state of emergency, the State may exercise its inherent police powers to enforce a temporary curfew even if no curfew ordinance has been formally enacted.

We view this case as factually distinguishable from cases which have held that where an ordinance is relied on, such as in the case of a stop for violation of local law, the ordinance must be pleaded and proved in the trial court, and absent a properly admitted copy of the ordinance, neither the trial court nor this court may take judicial notice of its existence.[5] The police power to take emergency actions in the public interest is inherent and does not derive from statute. Thus, it cannot be said that a legitimate exercise of police power necessarily depends upon the existence of a formal enactment.

We find that even without a formal enactment of a curfew ordi-

---

[1] (Citations omitted.) *State v. Stearns*, 240 Ga. App. 806, 807 (524 SE2d 554) (1999).

[2] *Veit v. State*, 182 Ga. App. 753, 756 (2) (357 SE2d 113) (1987).

[3] Id.

[4] See *Smith v. Avino*, 91 F3d 105, 109 (11th Cir. 1996) and cases cited therein.

[5] See, e.g., *In the Interest of J. T.*, 239 Ga. App. 756, 757-758 (521 SE2d 862) (1999) and cases cited therein.

nance Bailey was acting legitimately when he stopped Forehand. The issue is whether his motives and actions at the time and under all the circumstances were reasonable and not arbitrary or harassing.[6]

The generally articulated standard of reasonableness for a traffic stop is whether the law enforcement officer witnessed an "objective manifestation that the person stopped [was], or [was] about to be, engaged in criminal activity."[7] In this instance, the concern is whether there was an objective manifestation that Forehand was violating or was about to violate the emergency curfew designed to protect the public interest.

Clearly, there was such a manifestation. According to the Vienna police chief, the 7:00 p.m. to 7:00 a.m. curfew had been in effect for several days and had been highly publicized in the area. Bailey saw Forehand driving on the streets of Vienna at night several hours after the nightly curfew began. There is no evidence that Bailey's actions in stopping Forehand were arbitrary or harassing. He had been authorized and instructed by the police chief to enforce the curfew. Contrary to the trial court's determination, we find that Bailey acted legitimately when he stopped Forehand.

We find no evidence that the curfew was selectively enforced, which would have rendered the stop constitutionally invalid.[8] The record discloses that Bailey initially was told that no one was allowed to be out during the curfew, that the police patrol was concentrated in residential areas, and that Bailey was instructed later to allow persons to travel to and from work at a chicken plant outside of town. The record does not disclose that others required to work in the wake of the storm were not allowed to travel for that purpose.

For these reasons, we find that the trial court erred in suppressing evidence of the stop and concomitantly dismissing the indictment.

2. The State contends that the trial court incorrectly suppressed the videotape on the ground that it did not capture the entire encounter between Bailey and Forehand. Forehand has filed a motion to dismiss the State's appeal of this issue. He contends that the State is statutorily precluded from appealing this issue and that, therefore, this court is without jurisdiction to consider it.

Forehand correctly argues that the authority of the State to appeal an adverse ruling in a criminal case is limited to the six (formerly five) instances enumerated in OCGA § 5-7-1[9] and that while the State may appeal "[f]rom an order, decision, or judgment sup-

---

[6] See *State v. Armstrong*, 223 Ga. App. 350, 352 (2) (477 SE2d 635) (1996).
[7] (Citations and punctuation omitted.) Id. at 351.
[8] See *State v. Manos*, 237 Ga. App. 699, 700 (516 SE2d 548) (1999).
[9] See *Ritter v. State*, 269 Ga. 884, 885-886 (2) (506 SE2d 857) (1998).

pressing or excluding evidence *illegally seized* . . . ,"[10] it may not appeal the exclusion of evidence which is based only upon some general rule of evidence.[11]

However, in *State v. Pastorini*,[12] this court held that the State may appeal an order which suppresses evidence based upon both general rules of evidence and a determination that the evidence was illegally obtained. We find *Pastorini* to be controlling here. Forehand moved to suppress the videotape on the grounds that the stop was unlawful, pretextual and lacking in reasonable, articulable suspicion and probable cause and that the videotape did not reflect an accurate and total depiction of the incident. The order granting the motion to suppress the videotape did not state a basis for granting it. But the order did specifically state that "there [were] no grounds for a stop, and that there was no probable cause to initiate a traffic stop of [Forehand]." Although the court commented at the conclusion of the suppression hearing that it was suppressing the videotape because it did not completely depict the encounter and would be misleading to a jury, because the court also suppressed the stop, it is apparent that the videotape also would have been suppressed as fruit of the poisonous tree. Thus, we find that the State was authorized to appeal the suppression of the videotape pursuant to OCGA § 5-7-1 (a) (4), and we deny Forehand's motion to dismiss this portion of the appeal.

In Division 1, we found that Bailey was authorized to stop Forehand. Accordingly, the videotape could not be suppressed on the basis of an invalid stop. Next, we consider whether the videotape was properly suppressed on the ground that it did not depict the entire incident and would be misleading to a jury.

The rule in Georgia is well established that

> relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. . . . [S]uch considerations are appropriately committed to the trial court's sound exercise of discretion.[13]

However, "the Georgia rule favors the admission of any relevant evi-

---

[10] (Emphasis supplied.) OCGA § 5-7-1 (a) (4).

[11] *Berky v. State*, 266 Ga. 28, 29 (463 SE2d 891) (1995); *State v. Lavell*, 214 Ga. App. 525 (448 SE2d 270) (1994).

[12] 226 Ga. App. 260 (486 SE2d 399) (1997).

[13] (Citations and punctuation omitted.) *DeCastro v. State*, 221 Ga. App. 83, 84 (470 SE2d 748) (1996).

dence, no matter how slight its probative value."[14]

The trial court did not address the issue of whether the probative value of the videotape was substantially outweighed by a danger of unfair prejudice to Forehand. We find that the videotape has substantial probative value toward establishing the facts and nature of the physical altercation between Forehand and Bailey. On the other hand, we do not find that there is a substantial danger that Forehand would be unfairly prejudiced if the videotape is shown to a jury. There is no contention that the videotape shown to the trial court is not a videotape of the altercation.[15] There is a contention that it does not totally and completely depict the altercation. To the extent the videotape does not capture the entire course of events between Forehand and Bailey and does not capture the audio portion of the encounter, other forms of evidence such as oral testimony may be presented.[16] Moreover, the jury is authorized to consider any incompleteness of the videotape in determining the amount of weight and credibility to accord it.[17] For these reasons and those presented in Division 1, we find that the videotape should not have been suppressed.

*Judgment reversed. Johnson, C. J., and Smith, P. J., concur.*

DECIDED OCTOBER 13, 2000 —
RECONSIDERATION DENIED NOVEMBER 1, 2000 — 

*Kenneth B. Hodges III, District Attorney, Kathryn O. Fallin, Assistant District Attorney*, for appellant.

*Dodd & Dennis, Saleem D. Dennis*, for appellee.

*Kermit N. McManus, District Attorney, Garland, Samuel & Loeb, Donald F. Samuel, Jon W. Burton*, amici curiae.

---

[14] (Citations and punctuation omitted.) *Martin v. State*, 235 Ga. App. 844, 845 (3) (510 SE2d 602) (1998).

[15] Forehand asserts that the copy of the videotape submitted to this court is a poor copy of the videotape shown in the trial court and does not present the beginnings of the physical altercation as clearly as that tape. The parties are not confined to showing the copy of the tape that was submitted to this court if there is a clearer copy available.

[16] See *Harmon v. State*, 224 Ga. App. 890, 894 (4) (482 SE2d 730) (1997) (videotape properly admitted despite lack of sound and zooming problems where there was no contention that it inaccurately portrayed subject events).

[17] See *Anderson v. State*, 237 Ga. App. 595, 596-597 (3) (516 SE2d 315) (1999) (" 'The weight and credibility of witnesses are questions for the triers of fact; that some evidence offered by a witness seems contradictory to his own or to some other's, or *incomplete* or uncertain, does not automatically discredit the evidence given by that witness, or others, for it is the function of the triers of fact to determine to what evidence it gives credence. . . .' [Cit.]") (emphasis supplied).