### A03A1155. PHIEL v. BOSTON.
(586 SE2d 718)

PHIPPS, Judge.

Chad Phiel sued Russell Boston to recover actual and punitive damages for injuries sustained when he was attacked by Boston's Rottweiler dog. To recover in a dog bite case, the plaintiff must show either that the animal was not "at heel or on a leash" as required by a local ordinance at the time of the incident or that the owner knew that the dog had the propensity to commit the act that caused the injury.[1] At trial, the court granted Boston's motion for directed ver-

---

[1] *Durham v. Mason*, 256 Ga. App. 467, 468 (1) (568 SE2d 530) (2002).

dict on grounds that Phiel had made neither showing. Phiel appeals final judgment in favor of Boston. Finding error in the trial court's grant of Boston's motion for directed verdict on the leash law issue, we reverse.

Phiel works for the company that built Boston's home. Shortly after construction was finished, Phiel came to the house to compile a punch list of work that needed to be performed. Boston told Phiel that the back deck needed repairs. When Boston opened the door to the deck, Phiel observed an untethered Rottweiler dog weighing at least 100 pounds. After expressing some apprehension, Phiel came onto the deck because Boston assured him the dog would not attack. The dog, however, lunged at Phiel and bit him, causing severe and disabling injuries to his hand.

Through the testimony of Rosemary Prieur and Lisa Christopher, Phiel sought to show that the dog had a propensity to bite of which Boston was aware. Prieur, Boston's neighbor, testified that on at least two occasions when she was walking her small dogs around the subdivision, Boston's Rottweiler had charged down the driveway of Boston's house and growled at them in a very intimidating way. Prieur further testified that each time she had put her dogs under her arms, "face[d] the dog down," and backed away without incident. As a result, she never walked down that street again. Prieur was later stunned when she saw Boston let his small child walk the dog on a leash. She thereupon informed Boston that she could not walk her dogs past his house because his dog had charged toward them, and she advised him not to let the child try to control the dog or allow the dog to run loose. According to Prieur, Boston responded by saying something to the effect that "we have it under control" or "mind your own business."

Like Phiel, Christopher was employed by Boston's homebuilder. Christopher testified that when she had gone to Boston's home to perform warranty work, the dog was in the basement making a very loud noise in a seeming attempt to get into the house. Christopher, however, acknowledged that she had never seen the dog exhibit any dangerous or vicious behavior toward anyone.

Finding the evidence insufficient to show that Boston had knowledge of a propensity by the dog to bite, the court directed a verdict in favor of Boston on that issue and on Phiel's claim against Boston for punitive damages. In moving for a directed verdict on Phiel's claim that Boston had violated a local leash law, Boston argued that Phiel had failed to prove the existence of such a law. Phiel responded that a certified copy of the leash law had been filed with the court before trial. The court, however, noted that no copy of the leash law had been tendered in evidence at trial. Phiel then asked the court to reopen the evidence so that a certified copy of the leash law could be

admitted in evidence at trial. The court refused to reopen the evidence to allow Phiel to correct a defect in his proof after the defendant had moved for a directed verdict on that ground. The court later granted Boston's motion for directed verdict on the issue of whether he was chargeable with a leash law violation.

1. The trial court did not err in granting Boston's motion for directed verdict on the issue of the dog's propensity to bite.

"Georgia has traditionally adhered to the 'first bite' rule in deciding whether a dog owner has knowledge that his dog has the propensity to bite someone. [Cit.]"[2]

> Under this rule, a dog owner will be liable for damages only if the owner has knowledge that the dog has the propensity to do the particular act (biting) which caused injury to the complaining party. Under this test, the plaintiff must show whether the dog had the propensity to do the act that caused the injury and, if so, whether the owner had knowledge of that propensity.[3]

Thus, neither as worded, nor as applied, does the "first bite" rule literally require a first bite.[4]

In recognition of this, *Supan v. Griffin*[5] found sufficient evidence that the owner of a "Rottweiler and Chow mix" dog had prior knowledge of the dog's propensity to bite, based on a report by a neighbor that the dog had threatened him with "bared fangs, vicious growls, and attack behavior" and would have attacked him but for evasive actions which had put him beyond the reach of the dog. Comparable facts produced the same result in *Thurmond v. Saffo*.[6]

This case, however, is distinguishable from *Supan* and *Thurmond*. Here, Prieur was the only person to whom the dog had exhibited prior aggressive behavior, and she had been unable to take any evasive action that put her beyond the dog's reach. Yet the dog did not attack her. Nor did the dog attempt to attack her by snapping or nipping at her, nor even bare its teeth.[7] The dog merely charged down his owner's driveway and barked and growled at her and her two small dogs as they were walking by. This amounted only to

---

[2] *Clark v. Joiner*, 242 Ga. App. 421, 422-423 (2) (530 SE2d 45) (2000) (physical precedent only).

[3] (Citations and punctuation omitted.) *Wade v. American Nat. Ins. Co.*, 246 Ga. App. 458, 459 (1) (540 SE2d 671) (2000).

[4] See *McBride v. Wasik*, 179 Ga. App. 244, 245 (2) (345 SE2d 921) (1986); see also *Torrance v. Brennan*, 209 Ga. App. 65, 67 (2) (432 SE2d 658) (1993).

[5] 238 Ga. App. 404 (519 SE2d 22) (1999).

[6] 238 Ga. App. 687 (520 SE2d 43) (1999) (physical precedent only).

[7] See *Hamilton v. Walker*, 235 Ga. App. 635 (510 SE2d 120) (1998).

aggressive or menacing behavior insufficient to put the owner on notice of a propensity to bite.[8] "Here, [Phiel] has introduced no evidence that this dog had ever bitten anyone before and also has introduced no evidence that the dog had a tendency to attack humans or that [Boston] had any knowledge about the dog's temperament that would have put [him] on notice that the dog would bite someone."[9] Consequently, Boston was entitled to a directed verdict on the issue of his dog's propensity to bite and on Phiel's claim for punitive damages.

2. The trial court did, however, err in granting Boston's motion for directed verdict on the leash law issue.

Liability of the owner in a dog bite case may be established "by showing that the animal was required to be 'at heel or on a leash by an ordinance' of the applicable governmental body and that the animal at the time of the occurrence was not at heel or on a leash."[10] A local ordinance such as a leash law must be pleaded and proved.[11] Although Phiel did not submit proof of the ordinance during his case-in-chief, he sought to reopen the evidence to submit such proof after Boston had moved for a directed verdict based on an absence of trial evidence to support this element of Phiel's case. In denying Phiel's motion to reopen the evidence, the court abused its discretion.

> The directing of a verdict is a very, very grave matter, and as a vehicle of justice, is proper only where there is no issue of material fact, or unless the proved facts, viewed from every possible legal point, would sustain no other finding than the one so directed. In other words, the directed verdict is not a vehicle to obtain a judgment on the technical grounds that a plaintiff has merely neglected to show some evidence material to his case. Particularly, since the trial court may in its discretion permit the plaintiff to reopen his case and offer some neglected evidence, in such a case a directed verdict is generally improvident.[12]

> "Except in rare cases, as where the defendant would be subjected to unfairness or undue prejudice, or where the plaintiff has given evidence of an intention deliberately to trifle

---

[8] See id.; *Durham v. Mooney*, 234 Ga. App. 772, 773 (1) (507 SE2d 877) (1998) (barking and growling amount, at most, to menacing behavior that alone does not establish vicious propensity).

[9] *Clark v. Joiner*, supra at 423.

[10] *Fields v. Thompson*, 190 Ga. App. 177 (378 SE2d 390) (1989).

[11] See generally *Police Benevolent Assn. of Savannah v. Brown*, 268 Ga. 26, 27 (2) (486 SE2d 28) (1997); *State v. Forehand*, 246 Ga. App. 590, 592 (1) (542 SE2d 110) (2000).

[12] (Citations and punctuation omitted.) *Able-Craft, Inc. v. Bradshaw*, 167 Ga. App. 725, 726-727 (1) (307 SE2d 671) (1983).

with the court, or to delay the progress of the trial, it is an abuse of discretion for the trial judge to refuse to allow the plaintiff to produce additional evidence sufficient to avoid a nonsuit [now, directed verdict]." [Cit.][13]

Because it does not appear in this case that reopening the evidence would have subjected Boston to unfairness or undue prejudice or that Phiel was trifling with the court or intentionally delaying the trial, the court abused its discretion in refusing to allow the evidence to be reopened and thus erred in granting a directed verdict to Boston on the leash law issue.

*Judgment reversed. Ellington, J., concurs. Blackburn, P. J., concurs in Division 1 and in the judgment.*

DECIDED AUGUST 20, 2003.

*Richard E. Johnson, Angelyn M. Wright,* for appellant.
*Strawinski & Goldberg, James S. Strawinski, Nicole W. Stout,* for appellee.

---

[13] *Walker v. Central of Ga. R. Co.,* 47 Ga. App. 240, 253 (170 SE 258) (1933); see *Nat. Carloading Corp. v. Security Van Lines,* 164 Ga. App. 850, 851 (1) (297 SE2d 740) (1982).