**WHOLE COURT**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 16, 2015**

# In the Court of Appeals of Georgia

A15A0674. GREEN v. WILSON et al.

McFADDEN, Judge.

Pamela Green appeals from the grant of summary judgment to Robert Wilson in this personal injury action against him individually and in his capacity as executor of the estate of his wife, Audie Wilson. In the action, Green alleged that she was injured while trying to get away from the Wilsons' dog. Because there is evidence that Mrs. Wilson knew that the dog had the propensity to do the type of act that caused Green's injury, summary judgment is not appropriate. Accordingly, we reverse.

"Summary judgment is appropriate when no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. On appeal, we review a trial court's grant of summary judgment de novo, construing the evidence

and all inferences drawn from it in a light favorable to the nonmovant." *Stennette v. Miller*, 316 Ga. App. 425, 426 (729 SE2d 559) (2012) (citation omitted).

So viewed, the evidence showed that at the time of the incident Green worked for a housecleaning company that provided cleaning services to the Wilsons, who owned a border collie named Nani. Normally, after arriving at the Wilsons' house, the housecleaners would wait outside until Mrs. Wilson locked Nani in a room. When the housecleaners were ready to clean that room, Mrs. Wilson would move Nani, sometimes physically dragging the dog to another room as the dog lunged, barked, and growled at the housecleaners. After securing Nani in the other room, Mrs. Wilson would tell the housecleaners that they were "safe." Although Green testified that she did not see Nani behave viciously or aggressively, the other housecleaners testified that they were afraid of Nani.

On October 11, 2011, Green and a co-worker arrived at the Wilsons' house in a cleaning company van. Unlike other times, on this occasion Nani was outside the house in a fenced enclosure, barking. Green got out of the van. Suddenly, Green's co-worker saw Nani leap over the fence and run towards Green. The co-worker yelled a warning to Green, who quickly jumped inside the van and shut the door as Nani

barked, growled, and jumped against the van door. In Green's effort to escape the dog, she struck her arm against the van, sustaining an injury that required surgery.

Citing "principles of common law negligence," Green has argued that the Wilsons were liable because they knew of Nani's propensity to "chase people, or to act aggressively toward people so as to frighten them." (She expressly does not seek to recover under OCGA § 51-2-7, which provides for liability of the owner or keeper of a vicious or dangerous animal for injuries caused by that animal.) Our law as to negligence claims against dog owners provides that

> a dog owner will be liable for damages only if the owner has knowledge that the dog has the propensity to do the particular act . . . which caused injury to the complaining party. Under this test, the plaintiff must show that the dog had the propensity to do the act that caused the injury and, if so, whether the owner had knowledge of that propensity.

*Wade v. American Nat. Ins. Co.*, 246 Ga. App. 458, 459 (1) (540 SE2d 671) (2000) (citations and punctuation omitted) (addressing claims made under both the dangerous animal liability statute, OCGA § 51-2-7, and the premises liability statute, OCGA § 51-3-1). See generally *Stennette*, supra, 316 Ga. App. 425 (analyzing several theories through which plaintiff sought to impose liability upon defendant for dog attack).

3

The trial court granted summary judgment to Wilson on the ground that there was no evidence that Nani had the propensity to do the particular act that caused Green's injury because Nani had never before chased anyone, inside or outside the house. The trial court correctly noted that "a dog's aggressive or menacing behavior alone is not sufficient to place its owner on notice of a propensity" to do a particular act. *Wade*, 246 Ga. App. at 460 (1) (citation omitted). Nevertheless, the trial court considered the evidence in this case too narrowly. While a dog owner must

> have reason to know of [the animal's] propensity to do harm of the type which it inflicts[,] this does not mean an incident involving the exact same conduct and the exact same injury must actually occur before the owner's knowledge may be inferred, as long as there is an incident or incidents which would put a prudent man on notice to anticipate the event which occurred.

*Torrance v. Brennan*, 209 Ga. App. 65, 67-68 (2) (432 SE2d 658) (1993) (citations and punctuation omitted).

Green presented more than simply evidence of Nani's aggressive or menacing behavior. She presented evidence that, on at least one occasion, a barking and growling Nani lunged at the housecleaners as Mrs. Wilson held the dog back. We find no meaningful distinction between this behavior and what happened on the day Green

4

was injured. In both instances the dog's acts could be construed as attempts to move toward a person in an aggressive manner. The evidence of the incident in which Nani, while restrained, lunged aggressively at a housecleaner raises a genuine issue of material fact as to whether a prudent person would anticipate that Nani would chase someone if unrestrained. Together with that evidence, Mrs. Wilson's efforts to keep Nani away from the housecleaners also raises a fact question about her knowledge of the dog's propensities. See *Supan v. Griffin*, 238 Ga. App. 404, 406 (519 SE2d 22) (1999) (evidence that, three months before dog bite, defendant told another person to "do whatever was necessary . . . to keep the dogs from attacking" raised fact question as to defendant's prior knowledge of dogs' tendency to attack humans).

The dissent cites several cases in which we held that prior incidents, as a matter of law, did not show the defendant dog owner knew or should have known of the dog's propensity to do the act that resulted in the plaintiff's injury. In those cases, however, the dogs' prior conduct was not as similar to the conduct that injured the plaintiff as is the case here. See, e.g., *Kringle v. Elliot*, 301 Ga. App. 1, 3 (1) (686 SE2d 665) (2009) (dog that bit plaintiff previously had attacked animals); *Huff v. Dyer*, 297 Ga. App. 761, 763 (1) (678 SE2d 206) (2009) (dog that bit plaintiff previously had barked when children were near it); *Phiel v. Boston*, 262 Ga. App.

814, 816-817 (1) (586 SE2d 718) (2003) (dog that bit plaintiff previously had charged down defendant's driveway and growled at a person); *Wade*, 246 Ga. App. at 460 (1) (dog that bit plaintiff, who was familiar with it, previously had growled, chased and engaged in threatening actions toward strangers who approached its fenced enclosure); *Hamilton v. Walker*, 235 Ga. App. 635-636 (510 SE2d 120) (1998) (dog that bit plaintiff previously had growled, barked and appeared threatening to strangers); *Durham v. Mooney*, 234 Ga. App. 772, 773-774 (1) (507 SE2d 877) (1998) (dog that bit plaintiff previously had barked and growled at people); *Rowlette v. Paul*, 219 Ga. App. 597, 599 (466 SE2d 37) (1995) (dog that attacked and bit plaintiff, a stranger to it who had entered the defendant's backyard, previously had bitten the defendant's uncle when he startled the dog by banging on the porch where the dog was sleeping); *Marshall v. Person*, 176 Ga. App. 542, 543 (336 SE2d 380) (1985) (dog that jumped on plaintiff, a stranger to it, previously had jumped on its owners in a display of "frolicsome affection"); *Banks v. Adair*, 148 Ga. App. 254, 255 (251 SE2d 88) (1978) (dog bit plaintiff; decision does not describe any prior incidents but states that record was devoid of evidence to establish defendant's "knowledge of his dog's propensity to bite or injure humans").

6

Because a fact question exists as to whether Nani had the propensity to do the act that caused Green's injury and whether Mrs. Wilson had knowledge of that propensity, summary judgment was not appropriate. See *Evans-Watson v. Reese*, 188 Ga. App. 292, 293-294 (372 SE2d 675) (1988) (reversing grant of summary judgment to defendant in case involving injuries sustained when plaintiff ran from defendant's dog, where there was evidence of defendant's knowledge that dog previously had chased people, jumped at children, and had once "c[o]me at" a child).

*Judgment reversed. Barnes, P. J., Phipps, P. J., concur; Ellington, P. J., concurs in the judgment only; Dillard, Ray and McMillian, J J., dissent.*

A15A0674. GREEN v. WILSON et al.

DILLARD, Judge, dissenting.

Because there is no evidence in the record sufficient to infer that the owners

of the dog, the Wilsons,[1] knew or should have known of their dog's propensity to

chase people (inside or outside of the home), the trial court did not err in granting the

Wilsons' motion for summary judgment.

For Green to recover damages resulting from the injuries she sustained while

running away from the Wilsons' dog,[2] she must prove that the Wilsons knew or

---

[1] For the sake of simplicity, I will refer to Robert Wilson and the Estate of Audie Wilson collectively as "the Wilsons."

[2] Although Green maintains that her claim for damages is based on common law principles of negligence, rather than OCGA § 51-2-7, this appears to be (as the majority recognizes) a distinction without a difference for purposes of my analysis. Indeed, as our Supreme Court recently noted, the General Assembly's amendment to OCGA § 51-2-7 in 1985 made clear—to the extent that there was any doubt—that the standard for liability under the statute is negligence, not strict liability. *See Eshleman v. Key*, ___ Ga. ___ (___ SE2d ___), 2015 WL 3936075, *3 n. 3 (June 29, 2015).

should have known of their dog's propensity to do the particular act that caused the injury at issue.[3] The particular act that allegedly caused Green's injury was the Wilsons' dog chasing her. And while Green was not required to show that the Wilsons knew or should have known of the dog's propensity to do the *exact* same act that caused her injury (*i.e.*, vaulting the fence and chasing someone who had just pulled up in a vehicle),[4] the law does require that there must be at least one incident that would cause a prudent person to anticipate the actual incident that occurred (*i.e.*, chasing people in general).[5] Thus, unless Green can point to a prior incident of *the same type as the incident at issue*, the requisite knowledge necessary to impose

---

[3] *See Kringle v. Elliot*, 301 Ga. App. 1, 2 (686 SE2d 665) (2009); *Raith v. Blanchard*, 271 Ga. App. 723, 724 (1) (611 SE2d 75) (2005); *Phiel v. Boston*, 262 Ga. App. 814, 816 (1) (586 SE2d 718) (2003) (physical precedent only as to Division 2); *Wade v. American Nat'l Ins. Co.*, 246 Ga. App. 458, 459 (1) (540 SE2d 671) (2000); *Hamilton v. Walker*, 235 Ga. App. 635, 635 (510 SE2d 120) (1998); *Durham v. Mooney*, 234 Ga. App. 772, 773 (1) (507 SE2d 877) (1998).

[4] *See Durham*, 234 Ga. App. at 773 (1); *Torrance v. Brennan*, 209 Ga. App. 65, 67 (2) (432 SE2d 658) (1993).

[5] *See Kringle*, 301 Ga. App. at 2; *Durham*, 234 Ga. App. at 773 (1); *Torrance*, 209 Ga. App. at 67-68 (2); *Marshall v. Person*, 176 Ga. App. 542, 543 (336 SE2d 380) (1985); *Sutton v. Sutton*, 145 Ga. App. 22, 25 (1) (243 SE2d 310) (1978).

2

liability for the incident that caused her injury will not be ascribed to the Wilsons.[6]

This, Green has not done.

Here, the evidence shows that, on previous occasions, the Wilsons' dog had (at most) barked, growled, and lunged on its leash. Indeed, Robert Wilson testified that the dog had never bitten or attempted to bite anyone; nor was he aware of any instance where the dog chased anyone inside or outside of the home. Moreover, one of Green's own co-workers testified that, to her knowledge, the dog had never threatened her or any of her co-workers while they were cleaning the Wilsons' house.[7] Finally, Green even testified that she had never known the dog to be vicious

----

[6] *See Kringle*, 301 Ga. App. at 2 ("[I]n order to infer the requisite knowledge[,] there must be at least one incident that would cause a prudent person to anticipate the *actual incident* that caused the injury." (citation and punctuation omitted) (emphasis supplied)); *Durham*, 234 Ga. App. at 773 (1) (same); *Rowlette v. Paul*, 219 Ga. App. 597, 599 (466 SE2d 37) (1995) (noting that "[i]t is not enough, however, that the possessor of the animal has reason to know that it has a propensity to do harm in one or more specific ways; it is necessary that he have reason to know of its propensity to do harm of the type which it inflicts" (citation and punctuation omitted)); *Sutton*, 145 Ga. App. at 25 (1) (noting that the proper test is "whether the one incident was of such a nature as to cause a reasonably prudent person to believe that the animal was sufficiently dangerous as to be likely to cause an injury at a later time").

[7] During the co-worker's deposition, the following exchange took place between Green's co-worker and the Wilsons' attorney:

**Q.** Dog ever threaten you in any manner?

3

or aggressive before the chasing incident on October 3, 2011.[8]

**A.** No . . . .

**Q.** And so you had never seen him act that way[,] had you?

**A.** No, never.

[8] During Green's deposition, the following exchange took place between Green and the Wilsons' attorney:

**Q:** So I take it that you never had any problem with the dog in those [prior] instances [*i.e.*, when she cleaned the Wilsons' home], at all?

**A.** No, because . . .

**Q.** Would that be fair?

**A.** That's fair.

**Q.** Okay.

**A.** The only thing, the incident was he was outside that day . . . .

**Q.** Well, you never had – the dog . . . never chased you . . . . It didn't happen at any time, did it?

**A.** No, it did not . . . .

**Q.** [I]t's true, is it not, Ms. Green, that the dog never appeared vicious to you until the date of this incident? Isn't that correct?

**A.** Right, but that's the only – that's the only day because he was outside. Like I told you – if he was inside, that's a different thing.

Green and her co-worker attempted to temper the impact of the foregoing (and rather damaging) deposition testimony in post-deposition affidavits. But the trial court had every right to disregard Green's contradictory testimony under the Supreme Court of Georgia's holding in *Prophecy Corporation v. Charles Rossignol, Inc.*[9] Nevertheless, even if *all* of the affidavits Green submitted in support of her claim are accepted at face value, it is ultimately of no consequence. In the end, Green's evidence amounts to nothing more than incidents where the dog previously appeared threatening to Green and her co-workers, which, at best, can be characterized as aggressive or menacing behavior. And that is simply not enough to avoid summary adjudication. Indeed, we have repeatedly held that "menacing behavior alone does not establish vicious propensity," and that prior "acts of aggressive or menacing

---

**Q.** Right, but . . . he had never appeared aggressive to you until that date [of the chasing incident]. Isn't that correct?

**A.** Yes.

[9] 256 Ga. 27 (343 SE2d 680) (1986); *see also CSX Transp., Inc. v. Belcher*, 276 Ga. 522, 523 (1) (579 SE2d 737) (2003) ("Under *Prophecy*, a trial court that is faced with a party's self-contradictory sworn testimony on a material fact should disregard the portions of that testimony that favor the party when deciding a motion for summary judgment, unless the party offers a reasonable explanation for the contradiction.")

5

behavior" are insufficient to put an owner on notice of an animal's vicious tendencies.[10] It simply strains credulity, then, to infer that because the Wilsons may have been aware that their dog previously growled, barked, and lunged on its leash, they knew or should have known that the dog had a propensity to chase people.[11] At most, the evidence shows that the dog uncharacteristically vaulted the fence and chased Green, prompting Green to jump back into the vehicle and hurt her arm in the process. And while I have the greatest sympathy for Green's injuries, she is not

---

[10] *See Hamilton*, 235 Ga. App. at 635 ("This Court has specifically declined to establish a rule that a dog's menacing behavior should put an owner on notice of a dog's propensity to bite."); *accord Huff v. Dyer*, 297 Ga. App. 761, 763 (1) (678 SE2d 206) (2009); *Raith*, 271 Ga. App. at 725 (2); *Phiel*, 262 Ga. App. at 816-17 (1); *Wade*, 246 Ga. App. at 460 (1); *Durham*, 234 Ga. App. at 773 (1); *Banks v. Adair*, 148 Ga. App. 254, 255 (251 SE2d 88) (1978).

[11] *See Phiel*, 262 Ga. App. at 816-17 (1) (noting that a dog "charg[ing] down his owner's driveway and bark[ing] and growl[ing] at [a neighbor]" amounted only to "aggressive or menacing behavior" and is not sufficient to place the owner on notice of a "propensity to bite"); *Hamilton*, 235 Ga. App. at 635 (noting that "this Court has consistently held that the dog must have, on a prior occasion, done the same act which resulted in the injury comprising the tort action"); *Rowlette*, 219 Ga. App. at 599 (noting that "[j]umping up and biting someone on the buttocks who is dressed strangely in work clothes with a white dust mask and a hat because he startled a dog by banging on the porch was not sufficient to show a dangerous propensity for viciousness such that the [owners] were on notice that the dog would launch an unprovoked attack on a stranger coming into the yard").

6

entitled to recover damages for this unfortunate incident under our well-established precedent.[12]

For all of the foregoing reasons, I respectfully dissent.

I am authorized to state that Judge Ray and Judge McMillian join in this dissent.

---

[12] *Cf. Evans-Watson v. Reese*, 188 Ga. App. 292, 293 (372 SE2d 675) (1988) (allowing a claim to go forward against a dog owner when there were "a number of instances in which the dog ran loose, sometimes in [her] presence, and . . . chased people and put [some of them] in fear, that it jumped at children, and that [the owner] was aware that the dog repeatedly escaped the yard through an opening in the fence . . . .").