Dillard, Judge,
dissenting.
Because there is no evidence in the record sufficient to infer that the owners of the dog, the Wilsons,[1] knew or should have known of their dog’s propensity to chase people (inside or outside of the home), the trial court did not err in granting the Wilsons’ motion for summary judgment.
For Green to recover damages resulting from the injuries she sustained while running away from the Wilsons’ dog,[2] she must prove that the Wilsons knew or should have known of their dog’s propensity to do the particular act that caused the injury at issue.[3] The particular act that allegedly caused Green’s injury was the Wilsons’ dog chasing her. And while Green was not required to show that the Wilsons knew or should have known of the dog’s propensity to do the exact same act that caused her injury (i.e., vaulting the fence and chasing someone who had just pulled up in a vehicle),[4] the law does require that there must be at least one incident that would cause a prudent person to anticipate the actual incident that occurred (i.e., chasing people in general).[5] Thus, unless Green can point to a prior incident of the same type as the incident at issue, the requisite knowledge necessary to impose liability for the incident that caused her injury will not be ascribed to the Wilsons.[6] This, Green has not done.
*636 Here, the evidence shows that, on previous occasions, the Wilsons’ dog had (at most) barked, growled, and lunged on its leash. Indeed, Robert Wilson testified that the dog had never bitten or attempted to bite anyone; nor was he aware of any instance where the dog chased anyone inside or outside of the home. Moreover, one of Green’s own co-workers testified that, to her knowledge, the dog had never threatened her or any of her co-workers while they were cleaning the Wilsons’ house.* *****[7] 8Finally, Green even testified that she had never known the dog to be vicious or aggressive before the chasing incident on October 3, 2011.[8]
Green and her co-worker attempted to temper the impact of the foregoing (and rather damaging) deposition testimony in post-deposition affidavits. But the trial court had every right to disregard Green’s contradictory testimony under the Supreme Court of Georgia’s holding in Prophecy Corp. v. Charles Rossignol, Inc. [9] Nevertheless, *637 even if all of the affidavits Green submitted in support of her claim are accepted at face value, it is ultimately of no consequence. In the end, Green’s evidence amounts to nothing more than incidents where the dog previously appeared threatening to Green and her co-workers, which, at best, can be characterized as aggressive or menacing behavior. And that is simply not enough to avoid summary adjudication. Indeed, we have repeatedly held that “menacing behavior alone does not establish vicious propensity,” and that prior “acts of aggressive or menacing behavior” are insufficient to put an owner on notice of an animal’s vicious tendencies.[10] It simply strains credulity, then, to infer that because the Wilsons may have been aware that their dog previously growled, barked, and lunged on its leash, they knew or should have known that the dog had a propensity to chase people.* [11] At most, the evidence shows that the dog uncharacteristically vaulted the fence and chased Green, prompting Green to jump back into the vehicle and hurt her arm in the process. And while I have the greatest sympathy for Green’s injuries, she is not entitled to recover damages for this unfortunate incident under our well-established precedent.[12]
For all of the foregoing reasons, I respectfully dissent.
I am authorized to state that Judge Ray and Judge McMillian join in this dissent.
*638 Decided July 16, 2015 —
Reconsideration denied July 30, 2015 —
Smith & Jenkins, Wilson R. Smith, for appellant.
Saveli & Williams, William E. Turnipseed, for appellee.

 For the sake of simplicity, I will refer to Robert Wilson and the estate of Audie Wilson collectively as “the Wilsons.”

 Although Green maintains that her claim for damages is based on common law principles of negligence, rather than OCGA § 51-2-7, this appears to be (as the majority recognizes) a distinction without a difference for purposes of my analysis. Indeed, as our Supreme Court recently noted, the General Assemblys amendment to OCGA § 51-2-7 in 1985 made clear — to the extent that there was any doubt — that the standard for liability under the statute is negligence, not strict liability. See Eshleman v. Key, 297 Ga. 364, 368, n. 3 (774 SE2d 96) (2015).

 See Kringle v. Elliott, 301 Ga. App. 1, 2 (686 SE2d 665) (2009); Raith v. Blanchard, 271 Ga. App. 723, 724 (1) (611 SE2d 75) (2005); Phiel v. Boston, 262 Ga. App. 814, 816 (1) (586 SE2d 718) (2003) (physical precedent only as to Division 2); Wade v. American Nat’l Ins. Co., 246 Ga. App. 458, 459 (1) (540 SE2d 671) (2000); Hamilton v. Walker, 235 Ga. App. 635, 635 (510 SE2d 120) (1998); Durham v. Mooney, 234 Ga. App. 772, 773 (1) (507 SE2d 877) (1998).

 See Durham, 234 Ga. App. at 773 (1); Torrance v. Brennan, 209 Ga. App. 65, 67 (2) (432 SE2d 658) (1993).

 See Kringle, 301 Ga. App. at 2; Durham, 234 Ga. App. at 773 (1); Torrance, 209 Ga. App. at 67-68 (2); Marshall v. Person, 176 Ga. App. 542, 543 (336 SE2d 380) (1985); Sutton v. Sutton, 145 Ga. App. 22, 25 (1) (243 SE2d 310) (1978).

 See Kringle, 301 Ga. App. at 2 (“[I]n order to infer the requisite knowledge^] there must be at least one incident that would cause a prudent person to anticipate the actual incident that *636 caused the injury.” (citation and punctuation omitted; emphasis supplied)); Durham, 234 Ga. App. at 773 (1) (same); Rowlette v. Paul, 219 Ga. App. 597, 599 (466 SE2d 37) (1995) (noting that “[i]t is not enough, however, that the possessor of the animal has reason to know that it has a propensity to do harm in one or more specific ways; it is necessary that he have reason to know of its propensity to do harm of the type which it inflicts” (citation and punctuation omitted)); Sutton, 145 Ga. App. at 25 (1) (noting that the proper test is “whether the one incident was of such nature as to cause a reasonably prudent person to believe that the animal was sufficiently dangerous as to be likely to cause an injury at a later time”).

 During the co-worker’s deposition, the following exchange took place between Green’s co-worker and the Wilsons’ attorney:
Q. Dog ever threaten you in any manner?
A. No ... .
Q. And so you had never seen him act that way[,] had you?
A. No, never.

 During Green’s deposition, the following exchange took place between Green and the Wilsons’ attorney:
Q. So I take it that you never had any problem with the dog in those [prior] instances [¿.e., when she cleaned the Wilsons’ home], at all?
A. No, because .. .
Q. Would that be fair?
A. That’s fair.
Q. Okay.
A. The only thing, the incident was he was outside that day ....
Q. Well, you never had — the dog... never chased you.... It didn’t happen at any time, did it?
A. No, it did not....
Q. [I]t’s true, is it not, Ms. Green, that the dog never appeared vicious to you until the date of this incident? Isn’t that correct?
A. Right, but that’s the only — that’s the only day because he was outside. Like I told you — if he was inside, that’s a different thing.
Q. Right, but... he had never appeared aggressive to you until that date [of the chasing incident]. Isn’t that correct?
A. Yes.

 256 Ga. 27 (343 SE2d 680) (1986); see also CSX Transp., Inc. v. Belcher, 276 Ga. 522, 523 (1) (579 SE2d 737) (2003) (“Under Prophecy, a trial court that is faced with a party’s *637 self-contradictory sworn testimony on a material fact should disregard the portions of that testimony that favor the party when deciding a motion for summary judgment, unless the party offers a reasonable explanation for the contradiction.”).

 See Hamilton, 235 Ga. App. at 636 (“This Court has specifically declined to establish a rule that a dog’s menacing behavior should put an owner on notice of a dog’s propensity to bite.”); accord Huff v. Dyer, 297 Ga. App. 761, 763 (1) (678 SE2d 206) (2009); Raith, 271 Ga. App. at 725 (2); Phiel, 262 Ga. App. at 816-17 (1); Wade, 246 Ga. App. at 460 (1); Durham, 234 Ga. App. at 773 (1); Banks v. Adair, 148 Ga. App. 254, 255 (251 SE2d 88) (1978).

 See Phiel, 262 Ga. App. at 816-17 (1) (noting that a dog “charging] down his owner’s driveway and bark[ing] and growl[ing] at [a neighbor]” amounted only to “aggressive or menacing behavior” and is not sufficient to place the owner on notice of a “propensity to bite”); Hamilton, 235 Ga. App. at 635 (noting that “this Court has consistently held that the dog must have, on a prior occasion, done the same act which resulted in the injury comprising the tort action”); Rowlette, 219 Ga. App. at 599 (noting that “[j]umping up and biting someone on the buttocks who is dressed strangely in work clothes with a white dust mask and a hat because he startled the dog by banging on the porch was not sufficient to show a dangerous propensity for viciousness such that the [owners] were on notice that the dog would launch an unprovoked attack on a stranger coming into the yard”).

 Cf. Evans-Watson v. Reese, 188 Ga. App. 292, 293 (372 SE2d 675) (1988) (allowing a claim to go forward against a dog owner when there were “a number of instances in which the dog ran loose, sometimes in [her] presence, and... chased people and put [some of them] in fear, that it jumped at some children, and that [the owner] was aware that the dog repeatedly escaped the yard through an opening in the fence . . . .”).