A02A0562. DURHAM v. MASON et al.
(568 SE2d 530)

PHIPPS, Judge.

Michael Durham, through his father and next friend James Durham, sued Conney and Linda Mason for injuries he suffered when the Masons' dog bit him. The trial court granted summary judgment to the Masons on a number of grounds, including their lack of superior knowledge about the dangerous propensities of their dog and Michael Durham's assumption of the risk of interacting with the dog. We affirm on these two grounds.

The undisputed facts show that after school on March 5, 1998, 12-year-old Michael Durham and his friend Steven Mason went to the Mason residence to retrieve Steven's in-line skates so the two could go skating. Steven's parents (defendants Conney and Linda Mason) were not home and the house was locked, so Steven entered through a rear window. Michael, who was already wearing his skates, entered the house as well.[1] The Masons' dog, Taz, a black Labrador mixed breed, was in the kitchen on a leash tied to the pantry door.

At this point, the boys' testimony diverges. We base our judgment on Michael's version of events because, in reviewing a motion for summary judgment, we consider the facts in the light most favorable to the nonmovant.[2] Michael testified that he stood near the entrance to the kitchen while Steven got a snack. Michael began petting Taz, who jumped up and bit his ear, apparently without provocation.

Michael, through his father and next friend, sued the Masons, alleging that he had been an invitee in their home and that they had failed to adequately control their dog and ensure his safety. The Masons moved for summary judgment on multiple grounds, including their lack of superior knowledge of any dangerous tendencies of their dog and Michael's assumption of the risk. The trial court granted them summary judgment on these grounds, as well as on several others that we need not consider.

---

[1] Steven testified that he told Michael to wait outside, but Michael denied that Steven made such a statement.

[2] *Hansen v. Etheridge*, 232 Ga. App. 408 (501 SE2d 517) (1998).

1. OCGA § 51-2-7, which sets forth the liability of owners of vicious or dangerous animals for injuries caused by those animals, states in relevant part: "A person who owns or keeps a vicious or dangerous animal of any kind and who, by careless management or by allowing the animal to go at liberty, causes injury to another person who does not provoke the injury by his own act may be liable in damages to the person so injured." Unless there is evidence that the animal was not "at heel or on a leash" as required by local ordinance at the time of the incident,[3] a plaintiff in a dog bite case must show that the owner had knowledge that the dog had the propensity to commit the act that caused the injury.[4] "The true test of liability is the owner's superior knowledge of his dog's temperament."[5] If the plaintiff does not present evidence that the owner had superior knowledge of his dog's temperament, then the owner is entitled to summary judgment.[6]

In this case, there is no evidence that the Masons' knowledge of Taz's aggressive tendencies was superior to that of Michael. Linda Mason testified that on one occasion, apparently before he bit Michael, Taz had either "snapped" or "growled" at two young girls who were visiting her daughter. She further testified that Taz had never bitten or tried to bite any member of her family. Conney Mason testified that Taz was "absolutely loveable" and that he had no knowledge of the dog ever being aggressive except once when Taz barked and growled at a burglar. Steven testified that Taz once chased another boy in the Masons' yard, but only after Steven and the boy tried "to make him chase us because it was fun trying to run from him." Steven stated that he had never seen the dog act aggressively toward anyone else.

Michael Durham, on the other hand, testified that he had interacted with Taz many times before, that the dog "would growl at you," that the growling "kind of scare[d him]," and that he "wasn't real sure about the dog[,] how he would act." Michael also testified that his friend Travis had told him that Taz had once bitten his arm, leaving a scar.

Linda Mason, at least, arguably is chargeable with knowledge that Taz had aggressive tendencies because she testified that he had once "snapped" or "growled" at two children in her home. But Michael Durham had equal or superior knowledge of Taz's temperament. Taz

---

[3] See OCGA § 51-2-7; *Oertel v. Chi Psi Fraternity (Nat.)*, 239 Ga. App. 147, 148 (1) (521 SE2d 71) (1999).

[4] *Wade v. American Nat. Ins. Co.*, 246 Ga. App. 458, 459 (1) (540 SE2d 671) (2000); *Supan v. Griffin*, 238 Ga. App. 404, 406 (519 SE2d 22) (1999).

[5] (Citations and punctuation omitted.) *Wade*, supra at 461; see also *Webb v. Danforth*, 234 Ga. App. 211, 212 (505 SE2d 860) (1998).

[6] See *Wade*, supra.

had growled at Michael before, and Michael was afraid of him and unsure how he would act. Michael also knew, or was under the impression, that Taz had bitten another boy severely enough to leave a scar. In light of this evidence of Michael's equal or superior knowledge, the trial court properly granted summary judgment to the Masons.

2. The trial court also properly granted summary judgment on the Masons' assumption of the risk defense. This defense bars recovery when the evidence shows that the "plaintiff, without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free choice as to whether to engage in the act or not."[7] To establish this defense, the Masons must show that Michael (1) had actual knowledge of the danger that Taz might bite him; (2) understood and appreciated the risks associated with this danger; and (3) voluntarily exposed himself to those risks.[8] Although assumption of the risk ordinarily is a jury question, summary judgment is appropriate where plain, palpable, and undisputed evidence shows that the plaintiff assumed the risk of injury.[9]

As noted, Michael Durham's own testimony established that Taz had growled at him before, that he was afraid of the dog, that he felt the dog was unpredictable, and that he knew the dog previously had bitten another boy. Yet Michael voluntarily approached Taz, who was securely leashed in a locked house, and began petting him. These facts are plain, palpable, and undisputed evidence that Michael assumed the risk of injury.

James Durham, as Michael's next friend, suggests that the doctrine of assumption of the risk should not apply because his son was only 12 years old when the bite occurred. But we have held that the doctrine may apply to children between the ages of seven and fourteen if the evidence shows that the child appreciated the danger yet chose to confront it anyway.[10]

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED JUNE 24, 2002 —
RECONSIDERATION DENIED JULY 11, 2002.

*Douglas R. Daum*, for appellant.
*Gray, Hedrick & Edenfield, Lloyd B. Hedrick, Jr.*, for appellees.

---

[7] (Citation and punctuation omitted.) *Jekyll Island State Park Auth. v. Machurick*, 250 Ga. App. 700 (1) (552 SE2d 94) (2001).

[8] See id.

[9] Id. at 700-701.

[10] See *Stewart v. Harvard*, 239 Ga. App. 388, 396-397 (4) (b) (520 SE2d 752) (1999).