**SECOND DIVISION
BARNES, P. J.,
ADAMS and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/**

**June 26, 2012**

# In the Court of Appeals of Georgia

A12A0622. STENNETTE v. MILLER et al.

MCFADDEN, Judge.

Maureen Stennette was injured when she was bitten multiple times by Robin Miller's dog, Milo, while Stennette was at Miller's house providing nursing services to Miller's elderly mother, Helen Amonds, who also lived in the house. Stennette appeals from the trial court's grant of summary judgment to Miller in Stennette's personal injury action. As detailed below, we affirm the grant of summary judgment to Miller on Stennette's claims of liability based on the dangerous animal liability statute (OCGA § 51-2-7) and the premises liability statute (OCGA § 51-3-1), because Stennette failed to point to evidence showing triable issues on whether Milo had a vicious propensity and whether Miller knew of that propensity. But we reverse the grant of summary judgment to Miller on Stennette's claim that Miller negligently

performed a voluntarily-undertaken duty to keep the dog away from her when she was at the house, because the evidence created genuine issues of material fact as to this claim. (The trial court also granted summary judgment to Miller on Stennette's claim of liability based upon OCGA § 4-8-26, but Stennette has raised no claim of error on appeal regarding that ruling. )

"Summary judgment is appropriate when no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. On appeal, we review a trial court's grant of summary judgment de novo, construing the evidence and all inferences drawn from it in a light favorable to the nonmovant." (Citations and punctuation omitted.) *Stolte v. Hammack*, 311 Ga. App. 710 (716 SE2d 796) (2011).

So viewed, the evidence showed that at the time of the incident Stennette worked for a company that provided in-home nursing services to patients. On Stennette's first visit to Miller's house to provide services to Amonds, Milo jumped on her in an aggressive manner but did not attempt to scratch or bite her. Stennette asked Miller to keep Milo and Miller's other dogs away from her during that visit, and Miller did so. Stennette later informed her employer about the dogs and was told that it was company policy for dogs to be confined during a home health care visit. It became Stennette's practice to call Miller before visiting the house to ask that the

2

dogs be confined away from her and, upon arriving, to check that the dogs were so confined before entering the house.

They day of the incident, December 1, 2008, Stennette informed Miller that she would be coming to the house and asked that the dogs be confined. Miller put the six dogs – Milo (a male bulldog), two female bulldogs, and three smaller dogs – into her fenced backyard. She then departed to run an errand, leaving Amonds and the housekeeper at the house.

When Stennette arrived at the house she was greeted by the housekeeper who told her that the dogs were confined. As Stennette entered the house through the front door, however, the dogs managed to get into the house through the back door. As Milo approached Stennette, the housekeeper unsuccessfully attempted to stop him or call him back. The two female bulldogs began chewing on Stennette's shoe, and Milo bit her leg. Stennette jumped onto a couch, followed by Milo, who continued to bite her. She was bitten more than 20 times and sustained significant injuries before the housekeeper managed to pull Milo away from her. Amonds, who was in her eighties at the time, witnessed the incident but did not attempt to control Milo.

1. Stennette argues that a genuine issue of material fact exists as to Miller's liability under OCGA § 51-2-7, which "sets forth the liability of owners of vicious

or dangerous animals for injuries caused by those animals." *Durham v. Mason*, 256 Ga. App. 467, 468 (1) (568 SE2d 530) (2002). That Code section pertinently provides:

> A person who owns or keeps a vicious or dangerous animal of any kind and who, by careless management or by allowing the animal to go at liberty, causes injury to another person who does not provoke the injury by his own act may be liable in damages to the person so injured. In proving vicious propensity, it shall be sufficient to show that the animal was required to be at heel or on a leash by an ordinance of a city, county, or consolidated government, and the said animal was at the time of the occurrence not at heel or on a leash.

OCGA § 51-2-7. "Unless there is evidence that the animal was not 'at heel or on a leash' as required by local ordinance at the time of the incident, a plaintiff in a dog bite case [under OCGA § 51-2-7] must show that the owner had knowledge that the dog had the propensity to commit the act that caused the injury." (Citations omitted.) *Durham*, 256 Ga. App. at 468 (1). Accord *Oertel v. Chi Psi Fraternity*, 239 Ga. App. 147, 148-149 (2) (521 SE2d 71) (1999); *Fields v. Thompson*, 190 Ga. App. 177 (378 SE2d 390) (1989). As explained below, we find no genuine issue of material fact that, at the time of the incident, Milo was required to be at heel or on a leash or that Miller

4

had knowledge that Milo had the propensity to bite a human, and thus the court did not err in granting summary judgment on Stennette's OCGA § 51-2-7 claim.

(a) Stennette argues that Miller violated section 10-11 (a) (1) of Cobb County's animal control ordinance, which pertinently provided that "[i]t shall be unlawful for the owner of any animal to permit such animal to be out of his immediate control and restraint. . . ." The ordinance, however, did not require Milo to be "at heel or on a leash" at the time of the incident. Where, as here, a dog is on its owner's premises, section 10-11 (a) (2) a. of the ordinance permits three alternative means of restraining the dog:

> Restraint of dogs and/or animals shall be maintained as follows: . . . When upon the premises of the owner, all animals shall be kept [1] indoors or [2] in a primary enclosure as defined by this chapter in such a manner as to contain the animal within the bounds of the owner's premises, or [3] on a leash in the hands of a person that possess the ability to restrain the animal.

It is undisputed that, at all relevant times, Milo was kept either inside Miller's house or in her fenced backyard, which was a "primary enclosure" as defined by section 10-1 of the ordinance.

Nevertheless, Stennette argues that Miller was in violation of more general requirements of the ordinance relating to the control of animals, which she contends was enough to raise an issue of Miller's liability under OCGA § 51-2-7. She cites *Johnston v. Warendh*, 252 Ga. App. 674 (556 SE2d 876) (2001), in support of this argument. We find *Johnston* distinguishable because the dog in that case was not within its owner's house or fenced yard but was running free in front of the owner's house when it bit the plaintiff. Id. In any event, we must follow the plain meaning of the language in construing statutes and local ordinances. *Huff v. Dyer*, 297 Ga. App. 761, 764 (2) (678 SE2d 206) (2009). OCGA § 51-2-7 provides that an animal's vicious propensity may be proved by a showing of a specific type of violation of an animal control ordinance – a violation of a requirement that the animal be at heel or on a leash. But OCGA § 51-2-7 says nothing about violations of other requirements within an animal control ordinance. Because Stennette did not make the showing of the type of animal control ordinance violation specified by the plain language of OCGA § 51-2-7, she was required instead to show that Miller had knowledge of Milo's vicious propensity in order to establish Miller's liability under that Code section. See *Durham*, 256 Ga. App. at 468 (1).

6

(b) "In order to support an action for damages under OCGA § 51-2-7, it is necessary to show that the dog was vicious or dangerous and that the owner had knowledge of this fact." (Citation omitted.) *Rowlette v. Paul*, 219 Ga. App. 597, 599 (466 SE2d 37) (1995). "[T]o infer the requisite knowledge there must be at least one incident that would cause a prudent person to anticipate the actual incident that caused the injury." (Citation omitted.) *Durham v. Mooney*, 234 Ga. App. 772, 773 (1) (507 SE2d 877) (1998).

In support of her motion for summary judgment, Miller offered evidence that Milo had not previously bitten or attempted to bite anyone. See *Custer v. Coward*, 293 Ga. App. 316, 318-319 (1) (667 SE2d 135) (2008) (summary judgment was appropriate where there was no evidence that dog had bitten or attempted to bite anyone prior to incident). In response, Stennette failed to point to specific evidence giving rise to a triable issue on Miller's knowledge that Milo had a vicious propensity. See *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Stennette conceded in deposition testimony that she was not aware of any prior instance in which Milo had bitten a person and that, although Milo jumped on her in an aggressive manner on her first visit to the house, he did not attempt to bite or scratch her. A dog's menacing behavior alone does not demonstrate its vicious

7

propensity or place its owner on notice of such propensity. See *Huff*, 297 Ga. App. at 763 (1); *Raith v. Blanchard*, 271 Ga. App. 723, 725 (2) (611 SE2d 75) (2005); *Wade v. Am. Nat. Ins. Co.*, 246 Ga. App. 458, 460 (1) (540 SE2d 671) (2000). Although Stennette points to evidence that the female bulldogs were in heat, which could make a male dog more aggressive, this is not relevant to whether Milo had the propensity to bite a human and whether Miller knew of such propensity.

Finally, Stennette points to the testimony of a law enforcement officer who had asked Amonds about an older wound on her leg and who "believe[d] that Mrs. Amonds told [him] she was bit by the dog." By the summary judgment stage of the proceedings, Amonds had passed away, and the parties to this appeal have not addressed whether her out-of-court statement could be competent evidence against Miller. See generally *Chapel v. State*, 270 Ga. 151, 154-155 (4) (510 SE2d 802) (1998) (describing circumstances under which a statement made by a deceased person may be admissible under the necessity exception to the hearsay rule). Even so, Stennette's assertion that "the dog" to which Amonds referred was Milo rather than one of the other five dogs in the household amounts only to conjecture and does not establish a genuine issue of material fact. See *Bashlor v. Walker*, 303 Ga. App. 478, 482 (1) (b) (693 SE2d 858) (2010). The record contains no other evidence supporting

8

the conjecture that Milo had bitten Amonds, and Stennette's own deposition testimony contradicts this conjecture – despite being familiar with Amonds's wounds, Stennette testified that she had no information that, prior to Milo's attack against her, any dog in the household had bitten or harmed, or had attempted to bite or harm, any person.

2. Stennette argues that the trial court erred in granting summary judgment on her premises liability claim under OCGA § 51-3-1. But a plaintiff asserting a premises liability claim for injuries sustained from a dog bite is "required to produce evidence of the vicious propensity of the dog in order to show the dangerous condition of which the premises owner had superior knowledge." (Citation, punctuation and emphasis omitted.) *Wade*, 246 Ga. App. at 461 (1). As explained in Division 1 (b), Stennette has not pointed to evidence giving rise to a genuine issue of material fact on Milo's vicious propensity and Miller's knowledge thereof. Consequently, Miller was entitled to summary judgment on this claim.

3. We agree with Stennette, however, that the trial court erred in granting summary judgment on her claim that Miller breached a voluntarily-assumed "duty to secure the dogs from the area where [Stennette] was providing medical services." In *Osowski v. Smith*, 262 Ga. App. 538 (586 SE2d 71) (2003), a dog bite case, we held

9

that a plaintiff's claims under the dangerous animal liability statute and the premises liability statute were subject to summary judgment for lack of evidence that the dog had any dangerous propensities or that its owner knew about such propensities. Id. at 540 (1). We held, however,

> that does not end our analysis, because a person may be held liable for the negligent performance of a voluntary undertaking. Under this principle, one who undertakes to do an act or perform a service for another has the duty to exercise care, and is liable for injury resulting from his failure to do so, even though his undertaking is purely voluntary or even though it was completely gratuitous, and he was not under any obligation to do such act or perform such service, or there was no consideration for the promise or undertaking sufficient to support an action ex contractu based thereon. When one undertakes an act that he has no duty to perform and another person reasonably relies upon that undertaking, the act must generally be performed with ordinary or reasonable care. The person assuming such responsibility may be held liable for negligently performing the duties so assumed.

(Citations and punctuation omitted.) Id. Applying this principle, we held in *Osowski* that the court erred in granting summary judgment to a dog owner on the plaintiff's negligence claim in light of the following evidence: that the plaintiff, who was scheduled to perform work at the defendant's house, asked the defendant whether the dogs were aggressive or would pose a problem to him; that the defendant offered to

10

restrain the dogs if that would make the plaintiff "feel better"; that the plaintiff did not leave the safety of his vehicle until he had discussed with the defendant "the safety issue regarding restraining the dogs"; and that some of the dogs were not under restraint or confined away from the plaintiff at the time of the plaintiff's injury. Id. at 540-541 (1). This evidence, we reasoned, presented jury questions "as to whether [the defendant] explicitly or implicitly agreed to undertake ensuring that the dogs would not pose a risk of harm to [the plaintiff]," whether the defendant breached that duty, and whether such breach caused the plaintiff's harm. Id. at 541 (1).

The evidence in this case is similar to that in *Osowski*. Stennette was at Miller's house to perform a job. Previously she had expressed concern to Miller about the dogs and had asked that they be confined away from her on her visits to the house. Miller had complied with Stennette's requests. On the day of the attack, Stennette asked that the dogs be confined and did not enter the house until she received confirmation from the housekeeper that the dogs were in the backyard. In addition, Stennette presented evidence that Miller had left the dogs in the care of Amonds and the housekeeper on the day in question, but that Amonds and the housekeeper were not capable of controlling the dogs.

11

This evidence created a genuine issue of material fact as to whether Miller had undertaken a duty to keep the dogs away from Stennette while she was in the house, whether Miller breached that duty, and whether such breach caused Stennette's injuries. *Osowski*, 262 Ga. App. at 540-541 (1). Consequently, the court erred in granting summary judgment to Miller on Stennette's negligence claim.

*Judgment affirmed in part, reversed in part. Barnes, P. J., and Adams, J., concur.*