**FIFTH DIVISION
MCFADDEN, P. J.,
HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**October 30, 2025**

# In the Court of Appeals of Georgia

A25A0740. PHILIP v. POLLOCK et al.

McFADDEN, Presiding Judge.

Joseph Philip appeals from a trial court order granting summary judgment to defendants Timothy Pollock, Camron Pollock, and Sarah Garrison on Philip's claims under OCGA § 51-2-7 for injuries allegedly caused by a dog that was owned by Timothy Pollock and was under the control of Garrison, and his derivative claims for attorney fees and punitive damages.[1] The court granted summary judgment to Camron Pollock on a ground not challenged by Philip on appeal, so we must affirm the grant of summary judgment to him on the basis of that uncontested ground. But because

---

[1] The trial court also denied Philip's motion for summary judgment and granted summary judgment to the defendants on Philip's additional claims sounding in negligence, strict liability, and premises liability. But Philip has not challenged those rulings in this appeal.

there are genuine issues of material fact concerning the OCGA § 51-2-7 claims against both Timothy Pollock and Garrison, the grants of their motions for summary judgment must be reversed. As for the court's grant of summary judgment on the derivative claims, we reverse the ruling as to punitive damages because it was premised on the court's erroneous ruling regarding the OCGA § 51-2-7 claims, but we affirm the ruling as to the attorney fees claim under OCGA § 13-6-11 because it was also based on an alternative ground that has not been attacked on appeal.

1. *Facts and procedural posture*

Construed in the light most favorable to Philip as the nonmovant, see *Steagald v. Eason*, 300 Ga. 717, 718 n. 1 (797 SE2d 838) (2017), the evidence shows that Timothy Pollock and his wife Rackel Ramsay-Pollock owned a house in Cobb County where they did not reside, but where their son Camron Pollock lived with Garrison. Timothy Pollock paid Garrison to help him look after eight American Bully dogs that he kept at the house. Timothy Pollock estimated that Garrison took care of the dogs 60 percent of the time and he took care of them 40 percent of the time. Caring for the dogs included feeding them, letting them out of their cages, and exercising them.

On March 20, 2021, Philip and his cousin Joshua Chummar drove to the house to pick up Camron Pollock for a planned outing to Atlanta. As Philip and Chummar stood outside the house waiting for Camron Pollock, Garrison let all of the dogs out of their cages and she came outside with them to the area where Philip and Chummar were waiting. As the dogs roamed outside, a 10-month old male dog weighing 90 pounds and named Double Cross began nipping at the back of Philip's shirt and then became more aggressive, jumping up and biting the shirt. Philip attempted to walk away from Double Cross, but the dog jumped up, bit Philip's right arm, latched onto the arm, began violently shaking its head back and forth as it clamped down on the arm, and dragged Philip to the ground. Garrison yelled for Camron Pollock, who ran outside and was eventually able to get the dog off of Philip's arm.

Philip filed a complaint for damages against Timothy Pollock, Camron Pollock, and Garrison.[2] The complaint asserted, among other things, a claim under OCGA § 51-2-7 for injuries caused by a vicious animal that was not leashed as required by a county ordinance. Philip and the defendants filed opposing motions for summary

---

[2] The complaint also named Rackel Ramsay-Pollock and Cupid's Kennel, Timothy Pollock's company, as defendants. But Cupid's Kennel was dismissed by consent order and Philip has abandoned the claims against Ramsay-Pollock.

judgment. After a hearing, the trial court denied Philip's motion and granted the defendants' motions as to all claims. With regard to Camron Pollock, the trial court found that he was entitled to summary judgment on all claims because the undisputed evidence showed that he was not the owner or keeper of Double Cross at the time of the bite, and was thus insulated from liability. The court further found that all defendants were entitled to summary judgment on the OCGA § 51-2-7 claim because Philip had failed to make required showings concerning the dog's vicious propensity. This appeal followed.

2. *Camron Pollock*

As noted above, the trial court granted summary judgment to Camron Pollock on all claims asserted against him on the ground that he was not the owner or keeper of the dog. Philip has not challenged this ruling on appeal or otherwise asserted that the trial court erred by granting summary judgment to Camron Pollock on this separate ground.

> Grounds that are not attacked as erroneous will not be considered on appeal and are presumed to be binding and correct. An appellant's failure to attack alternative bases for summary judgment results in the affirmance of that judgment. We therefore affirm the portion of the trial court's order granting summary judgment [on all claims] to [Camron Pollock] on [this alternative ground].

4

*Medical Ctr. of Cent. Ga. v. City of Macon*, 326 Ga. App. 603, 607 (1) (757 SE2d 207) (2014) (citations and punctuation omitted). Accord *Cox-Ott v. Barnes & Thornburg*, 321 Ga. 688, 695 (2) (915 SE2d 894) (2025) (summary judgment affirmed where appellant failed to contest alternative basis for the judgment).

3. *Summary judgment on OCGA § 51-2-7 claim*

Philip contends that the trial court erred in granting summary judgment to Timothy Pollock and Garrison on his claim for damages under OCGA § 51-2-7. We agree.

OCGA § 51-2-7 provides:

> A person who owns or keeps a vicious or dangerous animal of any kind and who, by careless management or by allowing the animal to go at liberty, causes injury to another person who does not provoke the injury by his own act may be liable in damages to the person so injured. In proving vicious propensity, it shall be sufficient to show that the animal was required to be at heel or on a leash by an ordinance of a city, county, or consolidated government, and the said animal was at the time of the occurrence not at heel or on a leash.

"[I]n order to sustain an action for damages in a dog bite case [under this statute], a plaintiff must prove that the dog was vicious or dangerous and that the owner/keeper knew it." *Steusloff v. Finelli*, ___ Ga. App. ___ (3) (a) (Case Nos. A25A1366,

5

A25A1367, decided October 3, 2025). For OCGA § 51-2-7 claims involving a local ordinance, our Supreme Court has explained:

> [W]hen a local jurisdiction passes an ordinance requiring that owners restrain their animals and it is shown that the animal at issue was unrestrained at the time of the incident, the second sentence of OCGA § 51-2-7 displaces the common law presumption that a dog is a harmless species and instead defines such unrestrained animals as "vicious." However, the second sentence by its text does not displace the requirement in the common law, which our courts have read into the statute's first sentence, that a plaintiff seeking to recover under OCGA § 51-2-7 must also prove that the owner had knowledge of the vicious or dangerous propensity of the animal. Therefore, reading the two sentences together, and consistent with our case law construing the statute, *in situations where a plaintiff has shown that a local ordinance required the animal to be restrained and the animal was not restrained at the time of the incident, a plaintiff seeking to recover under OCGA § 51-2-7 must still prove scienter and can do so in two ways: by showing that the owner had knowledge of the animal's vicious propensity as defined by the common law or by showing that the owner knew that the animal was unrestrained at the time of the injury.*

*S&S Towing & Recovery v. Charnota*, 309 Ga. 117, 121-122 (2) (844 SE2d 730) (2020) (emphasis supplied).

In its summary judgment order, the trial court found that Philip had failed to show a triable issue as to either of these two ways of proving that the defendants had the requisite knowledge of the dog's vicious propensity under OCGA § 51-2-7. First, with regard to showing knowledge of Double Cross' vicious propensity as defined by

6

common law, the trial court found that Philip could not make such a showing because there was no evidence of at least one prior incident of the dog biting or being aggressive. Second, as to showing that Double Cross was unrestrained in violation of a local ordinance at the time of the injury, the court found that the ordinance relied on by Philip was not the type of animal control ordinance required by OCGA § 51-2-7. Both findings by the trial court were erroneous.

(a) *Knowledge of dog's vicious propensity as defined by common law*

Philip claims that the trial court erred in finding that there was no evidence giving rise to a triable issue about whether Timothy Pollock had knowledge of the dog's vicious propensity as defined at common law. We note that Philip has expressly made this claim only with regard to Timothy Pollock, not Garrison. So we limit our analysis of the issue only as it pertains to Timothy Pollock.

> [T]he requirement that the owner or keeper of a dog must be proved to have knowledge of the vicious or dangerous nature of his dog has become known as the "first bite rule." To the extent, however, that the term implies that the requisite knowledge cannot be proved unless and until the dog actually has bitten someone (and the owner or keeper knows it), the term is more than a bit misleading. . . . [T]he rule does not literally require a first bite. To be sure, a plaintiff must show that the owner or keeper has reason to know of the dog's propensity to do harm of the type which it inflicts. But this does not mean an incident involving

7

the exact same conduct and the exact same injury must actually occur before the owner's knowledge may be inferred.

*Steagald*, supra at 719-720 (citations and punctuation omitted).

While the trial court was correct in finding no evidence of a prior biting incident involving Double Cross, it disregarded other evidence from which a trier of fact could find that Timothy Pollock had "reason to know of the dog's propensity to do harm of the type which it inflict[ed.]" *Steagald*, supra at 719. Philip has pointed to evidence showing that Double Cross was kept in a single cage by himself in a garage or basement for all but about one hour each day; that Timothy Pollock had trained Double Cross to latch onto and pull a suspended rope during workout sessions lasting up to 45 minutes, after which he would immediately go back into his cage; that another dog trained by Timothy Pollock in that same way had bitten people; and that two days before the attack on Philip, a social media post for Timothy Pollock's dog kennel company showed pictures of Double Cross and described him as "Weaponized." When asked at his deposition whether American Bullies like Double Cross will chase and pull on objects, Timothy Pollock testified, "That's what a dog do. They . . . bite. That's the only form of . . . stuff they do. They bite. They bite at anything." He

further deposed that his dogs are unmanageable when they are all let out together, and that his male dogs become territorial and aggressive when let out together.

We find that the totality of this evidence creates genuine issues of material fact as to whether Double Cross "was being deliberately trained to be vicious[,]" whether Timothy Pollock "knew that his training and the demeanor being built into this [dog] gave him a dangerous propensity with respect to people[,]" and whether "[h]e was urging the dog into habits of aggressiveness and attack which common sense says would not be confined to inanimate objects." *Sanders v. Bowen*, 196 Ga. App. 644, 646 (2) (396 SE2d 908) (1990) (evidence that dog was trained to hold onto a two-by-four board with its jaws and was tormented with dead chickens).

We emphasize that we are not finding that any single piece of the evidence cited above would be sufficient to establish vicious propensity or that evidence of one dog's bite may be imputed to show the vicious propensity of another. Rather, we are simply holding that all of this evidence considered together, and construed in favor of the nonmovant on summary judgment, creates triable issues as to whether Timothy Pollock was raising Double Cross to be a dangerous and "weaponized" dog and thus

knew of his vicious propensity as defined by common law. The trial court therefore erred in granting summary judgment to Timothy Pollock on this ground.

(b) *County ordinance*

Philip contends that the trial court erred in granting summary judgment to both Timothy Pollock and Garrison by finding that he had not cited an applicable leash ordinance as required by OCGA § 51-2-7. We agree.

As recited above, OCGA § 51-2-7 provides that vicious propensity may be established by "show[ing] that the animal was required to be at heel or on a leash by an ordinance of a city, county, or consolidated government, and the said animal was at the time of the occurrence not at heel or on a leash." Here, Philip introduced a certified copy of Cobb County Ordinance Sec. 10-11 (a) (2) a., which provides:

> Restraint of dogs and/or animals shall be maintained as follows: When upon the premises of the owner, all animals shall be kept indoors or in a primary enclosure as defined by this chapter in such a manner as to contain the animal within the bounds of the owner's premises, or on a leash in the hands of a person that possesses the ability to restrain the animal.

"[W]e must follow the plain meaning of the language in construing statutes and local ordinances." *Stennette v. Miller*, 316 Ga. App. 425, 428 (1) (a) (729 SE2d 559)

10

(2012), disapproved in part on other grounds by *S&S Towing*, supra at 122 (2) n. 6. Under the plain language of this county ordinance, at the time of the incident on Timothy Pollock's premises, Double Cross was required to have been kept indoors, in a primary enclosure, or on a leash. Philip asserts that since there is evidence showing that Double Cross was not indoors or in an enclosure at the time of the incident, the ordinance plainly required the he be restrained on a leash and thus it is the type of leash ordinance contemplated by OCGA § 51-2-7. We agree and hold that the trial court's ruling to the contrary was erroneous.

In reaching its erroneous conclusion, the trial court cited *Stennette*, supra. But the trial court's reliance on *Stennette* was misplaced because that case involved a different Cobb County ordinance that "did not require [a dog] to be at heel or on a leash at the time of the incident." *Stennette*, supra at 427 (1) (a) (punctuation omitted). The plaintiff in *Stennette* argued that the defendant had violated an ordinance providing that "it shall be unlawful for the owner of any animal to permit such animal to be out of his immediate control and restraint." Id. at 427 (1) (a) (punctuation omitted). We rejected that argument because the plaintiff, by relying on that ordinance, did not show the type of violation specified by the plain language of

11

OCGA § 51-2-7 — "a violation of a requirement that the animal be at heel or on a leash." Id. at 428 (1) (a).

Unlike *Stennette*, the plain language of the ordinance cited by Philip does require that a dog be on leash under the alleged circumstances at the time of the incident. So the trial court erred in finding that Philip had failed to cite an applicable ordinance under OCGA § 51-2-7. Accordingly, the trial court's grant of summary judgment to Timothy Pollock and Garrison based on its erroneous ruling must be reversed.

(c) *Right for any reason*

The appellees claim that we could affirm the trial court's summary judgment order under the right-for-any-reason rule, including arguments concerning causation and provocation. See *Stanford v. City of Atlanta*, 361 Ga. App. 248, 254 (3) (863 SE2d 721) (2021) (appellate courts may apply the right-for-any-reason rule when reviewing certain judgments de novo). But we have discretion in whether to apply that rule, see *City of Gainesville v. Dodd*, 275 Ga. 834, 838-839 (573 SE2d 369) (2002), and decline to do so here.

We are a court for correction of errors and generally will not review issues, like those now raised by the appellees, that have not been ruled on below. See *Owensby v. Williams*, 355 Ga. App. 695, 699 (c) (843 SE2d 899) (2020) (absent definitive ruling by trial court on an issue, there is nothing to review on appeal). "Our Supreme Court has stated that the tenet that the appellate courts do not rule on issues not ruled on by the trial courts preserves the appellate courts' jurisdiction and delineates the proper roles of the courts at the trial and appellate levels." *Stanford*, supra (citation and punctuation omitted). The arguments made by the appellees in large part concern conflicts in the evidence and questions of fact that require findings that have not yet been made by the trial court. We decline to decide these issues in the first instance without the benefit of rulings from the trial court. See *Perry v. Emory Healthcare Servs. Mgmt.*, 374 Ga. App. 41, 47-48 (911 SE2d 229) (2025) (declining to address issues not ruled on by trial court under right-for-any-reason rule).

4. *Derivative claims*

Philip contends that the trial court's grant of summary judgment on his derivative claims for attorney fees and punitive damages must be reversed because that ruling was based on the court's erroneous grant of summary judgment on the

substantive OCGA § 51-2-7 claim. Philip is correct that this was the sole basis for the court's grant of summary judgment on the punitive damages claim. Since we have reversed the grant of summary judgment on that substantive claim, the grant of summary judgment on the derivative claim for punitive damages likewise must be reversed.

But as to Philip's claim for attorney fees under OCGA § 13-6-11, the trial court also granted summary judgment on the separate ground that a bona fide controversy existed in the case and therefore the claim failed as a matter of law. Philip has not attacked this alternative basis for summary judgment as erroneous. Consequently, as explained above, this alternative ground is presumed to be binding and correct, and Philip's failure to challenge it results in the affirmance of the portion of the trial court's order granting summary judgment on the claim for attorney fees under OCGA § 13-6-11. See *Cox-Ott*, supra; *Medical Ctr. of Cent. Ga*, supra.

*Judgment affirmed in part and reversed in part. Hodges and Pipkin, JJ., concur.*